JUSTUS v SWOPE

Docket No. 116227. Submitted March 20, 1990, at Lansing. Decided
June 4, 1990. Leave to appeal applied for.

Joseph D. Justus, an employee of Scott's Tree Service, sustained
injury while removing a dead tree on the property of Richard
and Leota Swope, who had contracted with Scott's Tree Service
for the removal of the tree. Justus brought an action in
Jackson Circuit Court against the Swopes. Plaintiff alleged that
defendants were liable for his injuries on the grounds that
their liability was nondelegable because tree removal is an
inherently dangerous activity, defendants were negligent in
hiring an incompetent tree removal service, and a release
purporting to absolve defendants of any liability incurred from
the tree removal was not effective to absolve defendants from
liability. The court, Alexander C. Perlos, J., granted summary
disposition in favor of defendants and dismissed the action.
Plaintiff appealed.

The Court of Appeals *held:*

1. The "inherently dangerous activity" exception to the gen-
eral rule that an owner of property is not liable to an employee
of an independent contractor for negligence is not to be applied
in the case where, as here, (1) the owner of the property has no
knowledge of the normal procedures involved in the activity, (2)
the owner of the property has no knowledge of, or capability to
provide, proper safety precautions, and (3) the independent
contractor and his employees are more knowledgeable than the
owner of the property about the activity, risks and necessary
precautions.

2. Plaintiff failed to show that there was a genuine issue of
material fact on the question of negligent hiring of the tree
removal service. The trial court therefore properly granted
summary disposition of the claim of negligent hiring.

3. Plaintiff's claim involving the release did not state a cause

REFERENCES

Am Jur 2d, Independent Contractors §§ 27, 28; Premises Liability
§ 457.

See the Index to Annotations under Independent Contractors; Labor
and Employment; Trees and Shrubbery.

of action, but rather was an anticipatory response to defendants' defense of release. As such, the claim was properly subject to summary disposition.

Affirmed.

1. MASTER AND SERVANT — NEGLIGENCE — INDEPENDENT CONTRACTORS — INJURIES TO EMPLOYEES — LIABILITY OF PROPERTY OWNERS — INHERENTLY DANGEROUS ACTIVITIES.

As a general rule, an owner of property is not liable to an employee of an independent contractor for negligence; an exception to this rule exists in the case where the work is inherently dangerous, i.e., where the work can reasonably be foreseen as dangerous to third parties.

2. MASTER AND SERVANT — NEGLIGENCE — INDEPENDENT CONTRACTORS — INJURIES TO EMPLOYEES — LIABILITY OF PROPERTY OWNERS — INHERENTLY DANGEROUS ACTIVITIES.

The "inherently dangerous activity" exception to the general rule that an owner of property is not liable to an employee of an independent contractor for negligence is not to be applied where (1) the owner of the property has no knowledge of the normal procedures involved in the activity, (2) the owner of the property has no knowledge of, or capability to provide, proper safety precautions, and (3) the independent contractor and his employees are more knowledgeable than the owner of the property about the activity, risks and necessary safety precautions.

*Thomas P. Kurt,* for plaintiff.

*Willingham & Coté, P.C.* (by *Marianne E. Samper*), for defendants.

Before: GILLIS, P.J., and McDONALD and J. W. FITZGERALD,* JJ.

J. W. FITZGERALD, J. Plaintiff appeals as of right the trial court's grant of summary disposition in favor of defendants and dismissal of plaintiff's cause of action. Defendants are homeowners who hired Scott's Tree Service, operated by Scott Szeve, an independent contractor, to remove a dead tree

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

from their yard. Plaintiff, an employee of Scott's
Tree Service, was injured during this activity. He
filed suit against defendants, claiming that they
were liable for his injuries on the grounds that: (1)
their liability was nondelegable because tree re-
moval is an inherently dangerous activity; (2) de-
fendants were negligent in hiring an incompetent
tree removal service; and (3) a "release" purport-
ing to absolve defendants of any liability incurred
from the tree removal, signed by Scott Szeve and
witnessed by plaintiff, did not absolve defendants
from liability. The trial court granted summary
disposition in favor of defendants on all three
counts. We affirm, although for reasons different
than those specified by the trial court.

In July, 1986, defendants hired Scott's Tree
Service to remove a forty-foot tall dead tree from
their yard for $40. The tree was described as
having a telephone pole type of appearance. Scott
Szeve had been trained and certified in the area of
tree removal. On July 30, 1986, Szeve, plaintiff
and another worker arrived to cut down the tree.
Its removal was complicated by the proximity of a
neighbor's shed. Therefore, Szeve decided to re-
move the tree by a process known as "topping."
This involved cutting the tree in sections from the
top down and lowering the pieces to the ground by
means of a rope swung through the crotch of a
nearby live tree, essentially utilizing a pulley sys-
tem. One worker would climb the tree, tie the rope
around the top section and cut the tree below the
rope. Another worker on the ground would hold
the rope and, as the top section was pushed away,
was to let the rope slip through his hands, lower-
ing the cut section to the ground. Plaintiff was the
ground worker on this occasion, and for some
reason failed to let the rope slide through his
hands. Consequently, he was either hit in the head

by the cut section of the tree that came down, or was pulled into the live tree. Plaintiff claims permanent brain damage and medical expenses in excess of $115,000. The tree service carried no insurance.

Plaintiff filed the instant action against defendants, alleging their liability for plaintiff's injuries as owners of the property and employers of Scott's Tree Service. Motions for summary disposition by both plaintiff and defendants were brought and heard on October 7, 1988. Summary disposition was granted in favor of defendants and plaintiff appeals.

First, plaintiff contends that the trial court erred in granting summary disposition on his claim that tree removal is an inherently dangerous activity and defendants had a nondelegable duty to guard against safety risks.

The general rule is that an owner of property is not liable to an employee of an independent contractor for negligence. *Samodai v Chrysler Corp,* 178 Mich App 252, 255; 443 NW2d 391 (1989), lv den 433 Mich 877 (1989). One exception to this rule is the "inherently dangerous activity" doctrine—i.e., where the activity can reasonably be foreseen as dangerous to third parties. *Id.; Bosak v Hutchinson,* 422 Mich 712, 724; 375 NW2d 333 (1985). The inherently dangerous activity doctrine is something akin to strict liability. *Id.,* pp 729-730.

The *Bosak* Court utilized the Restatement definitions of "inherently dangerous activity":

The Restatement of Torts, 2d, defines inherently dangerous activity in two sections, § 416 and § 427, which, according to Comment *a* to § 416, overlap. Section 416 refers to "peculiar risk":

"One who employs an independent contractor to do work which the employer should recognize as

likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise. [2 Restatement Torts, 2d, § 416, p 395.]"

Section 427 refers to "special danger":

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger. [2 Restatement Torts, 2d, § 427, p 415.]" [*Bosak, supra,* p 726.]

Comments *b, c* and *d* to § 427 provide some insight into the application of the above definitions. See *Bosak, supra,* p 729, quoting Comments *b* and *c.* They state, in part:

*b. . . .* It is sufficient that work of any kind involves a risk, recognizable in advance, of physical harm to others which is inherent in the work itself, or normally to be expected in the ordinary course of the usual or prescribed way of doing it, or that the employer has special reason to contemplate such a risk under the particular circumstances under which the work is to be done.

*c. . . .* The rule applies equally to work which, although not highly dangerous, involves a risk recognizable in advance that danger inherent in the work itself, or in the ordinary or prescribed way of doing it, may cause harm to others.

*d.* As in the case of the rule stated in § 416, the rule here stated applies only where the harm results from the negligence of the contractor in failing to take precautions against the danger

involved in the work itself, which the employer should contemplate at the time of his contract. It has no application where the negligence of the contractor creates a new risk, not inherent in the work itself or in the ordinary or prescribed way of doing it, and not reasonably to be contemplated by the employer.

Thus, the risk involved in the activity must be recognizable in advance, at the time of the contract, and "inherent in the work itself" or "normally to be expected in the ordinary course of the usual or prescribed way of doing it."

In order to determine what is "recognizable" at the time of the contract, we must look to the person who is to make that recognition. Here, we have mere homeowners who purport to know nothing about tree removal. They had little knowledge as to what would normally be expected in the usual course of tree removal, much less what deviations from the ordinary were necessary in this case to avoid the neighbor's shed. Although defendants knew of the existence of the shed and were concerned about damaging it, they could not have been expected to know, at the time of the contract, whether its existence created additional risk to the employees of the independent contractor in removing the tree.

The inherently dangerous activity doctrine has, thus far, been found to impose liability in cases involving owners fully capable of recognizing the potential danger. See *McDonough v General Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972); *Vannoy v City of Warren,* 15 Mich App 158; 166 NW2d 486 (1968), lv den 382 Mich 768 (1969). See also *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974) (liability found under the

"retained control" doctrine).[1] Although liability cannot be imposed simply because the defendant happens to be a large corporation or municipality rather than an individual, see *id.,* p 108, clearly where an entity has access to the expertise to recognize the risks and dangers in an activity, not to mention the expertise and resources in order to recognize and enforce the safety precautions necessary to make an activity safer, the application of the doctrine does not work an injustice.

The application of the inherently dangerous activity doctrine in cases such as this was the fear expressed in the dissent by Justice BRENNAN in *McDonough, supra,* p 456:

> The mischief of today's decision is not its result, but its logic. One assumes that a company like General Motors has no want of access to expertise. It may well have safety engineers on its payroll far more knowledgeable about structural steel than the decedent's employer. But to predicate liability here on the *Inglis, Olah, Wight and Watkins* [2] line of cases is to impose upon many, many other, less sophisticated defendants the same burden to attend to the safety of the employees of independent contractors.

It is not reasonable, nor in the public interest, to expect a mere homeowner to be cognizant of, or liable for, the "special dangers" or "peculiar risks" to employees of an independent contractor where

---

[1] This Court has been asked to apply the inherently dangerous activity doctrine in one case involving a homeowner. *Muscat v Khalil,* 150 Mich App 114,; 388 NW2d 267 (1986), lv den 425 Mich 864 (1986). However, that case was distinguished on the basis that it was the independent contractor himself, and not an employee of an independent contractor, who was requesting relief.

[2] *Inglis v Millersburg Driving Ass'n,* 169 Mich 311; 136 NW 443 (1912); *Olah v Katz,* 234 Mich 112; 207 NW 892 (1926); *Wright v H G Christman Co,* 244 Mich 208; 221 NW 314 (1928); *Watkins v Gabriel Steel Co,* 260 Mich 692; 245 NW 801 (1932).

he has no knowledge of the normal procedures involved in the activity, he has no knowledge of, or capability to provide, proper safety precautions, and where the independent contractor and his employees are more knowledgeable than the homeowner about the activity, risks and necessary safety precautions. It is not reasonable to expect that a homeowner be required to educate himself as to the procedures and risks involved in activities such as tree removal, furnace maintenance, carpentry, or the like, to be performed at his home by an independent contractor. In essence, we must make a policy determination on whether the public interest is best served by imposing liability in a case such as this on a private homeowner, as opposed to the "expert" he hired to carry out the task at hand. See *Funk, supra,* pp 101-102. We do not believe that imposing such liability on a private homeowner would be in the public interest.

In this case, defendants knew of the possibility of damage to the neighbor's shed and the possibility of danger if a neighborhood child suddenly ran onto their property, as shown by defendants' request for Szeve to sign a release after the tree removal operation had begun. However, there is no factual support for the proposition that defendants had any knowledge of tree removal procedures or the "peculiar risks" involved for plaintiff. Quite the contrary, defendant Richard Swope testified at his deposition that although he was watching the activity he did not understand what they were doing and left the safety measures to them because it was not his "field." Therefore, we decline to impose liability on defendants in this case, and affirm the trial court's decision on this matter.

Second, plaintiff contends that the trial court erred in granting summary disposition in favor of defendants on his claim that defendants were

negligent in the hiring of Scott's Tree Service. Without citing any supporting authority, plaintiff argues that there was justification for an inference that defendants knew that they were hiring an incompetent tree service because (1) defendants paid only $40 for the job, (2) the tree service's employees were not wearing the safety gear available on the truck, and (3) defendants knew that the tree service did not have any insurance.

Deposition testimony reveals that defendant Richard Swope was told by Scott Szeve that "he had done a lot of work in the neighborhood" and that earlier in the day they had "topped" a tree for one of defendants' neighbors. Defendant Richard Swope was also given the service's business card, which represented that it was "certified in tree service." Plaintiff himself readily admitted that he harbored no concern over the service's skill because he knew that Szeve was certified. Plaintiff also admitted that he had used the pulley system to lower trees to the ground about twenty times prior to the incident, each time experiencing no problem in handling the rope. Thus, despite the isolated facts upon which plaintiff relies, the record reveals that defendants had every reason to believe that Scott's Tree Service was competent to do the job requested. Moreover, aside from the fact that plaintiff was not wearing a hard hat and got hit on the head, plaintiff can point to no facts indicating that the crew was incompetent. For these reasons, plaintiff has failed to show that there was a genuine issue of material fact on the question of negligent hiring, and summary disposition was proper. MCR 2.116(C)(10).

Third, plaintiff claims that the trial court erred in failing to grant summary disposition in his favor on defendants' affirmative defense of release. Rather, the trial court granted defendants' motion

for summary disposition on Count III of plaintiff's complaint, pursuant to MCR 2.116(C)(8), on the ground that it did not constitute a cause of action, but was merely an anticipatory reply to defendants' affirmative defense. The merits of the defense of release were never reached by the trial court.

On appeal, plaintiff does not assign error to the trial court's dismissal of Count III of his complaint, but only its failure to grant summary disposition in his favor on defendants' defense of release. Because the court did not reach the merits of that defense, this Court cannot review it, our review being limited to issues actually reached by the trial court below. *Joe Dwyer, Inc v Jaguar Cars, Inc,* 167 Mich App 672, 685; 423 NW2d 311 (1988). Further, our review of the record reveals that the trial court properly ruled that Count III did not state a cause of action, but rather was an anticipatory response to defendants' defense of release, and properly granted summary disposition pursuant to MCR 2.116(C)(8).

Because of our disposition of the above issues, we need not address plaintiff's other claims.

Affirmed.