546 S.E.2d 770

James Lawrence ROBERTSON, Jr., Individually and as Natural Father, Guardian and next friend of Jessica B. Robertson and Justin R. Robertson, Infants, Plaintiff Below, Appellant,

v.

Susan MORRIS and Herbert Clifton Adkins, Defendants Below, Appellees.

No. 28200.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2001.

Decided April 27, 2001.

Harry F. Bell, Jr., William L. Bands, Bell & Associates, Charleston, Attorneys for Appellant.

Anita R. Casey, Craig P. Erhard, MacCorkle, Lavender & Casey, Charleston, Attorneys for Susan Morris, Appellee.

PER CURIAM:

The appellant in this proceeding, James Lawrence Robertson, Jr., was severely injured when he fell from a tree which he was cutting on the premises of the appellee, Susan Morris. The appellant sued Ms. Morris, and Ms. Morris raised as a defense the "independent contractor" defense, that is, that Mr. Robertson, or a person for whom he was working, was an independent contractor and that, as a consequence, she was not legally responsible under the law of West Virginia for his injuries. After some development of the case, the Circuit Court of Cabell County agreed with Ms. Morris and granted her summary judgment. On appeal, Mr. Robertson claims that the trial court erred in granting summary judgment.

## I.

### FACTS

The facts of this case show that the appellee Susan Morris, a homeowner, contacted Herbert Clifton Adkins, a person who had previously done work for her, about removing a tree from her property. Mr. Adkins did not want to do the work, but he suggested that the appellant, James Lawrence Robertson, Jr., might be interested. Subsequently, Mr. Adkins contacted the appellant, and he and the appellant went to Ms. Morris' home to examine the tree. While there, Mr. Adkins discussed the particulars of the job with Ms. Morris. In the course of discussing the job, according to Ms. Morris:

> I asked if he [Mr. Adkins] was licensed and insured, and he said yes. And he got out the little piece of paper and told me, he said, "Yeah, you have to have this before you can work." And he told me, he said you go to the courthouse and pay something like $60 or something, and he was, you know, kind of—I don't want to say proud, but you know what I mean.

The appellant did not participate in this discussion. As it later turned out, Mr. Adkins lied to the appellant about having a license and insurance and did not in fact have them. After this discussion, Ms. Morris told Mr. Adkins that she wanted the tree removed.

Mr. Adkins, in turn, told the appellant to cut the tree, and on May 11, 1994, the appellant and his son went to Ms. Morris' home with the equipment which the appellant felt was necessary to cut the tree. At the time of their arrival, Ms. Morris was not home. The appellant and his son nonetheless began cutting the tree. As they were doing so, the wind blew a limb against the appellant, who was in the tree, and knocked him to the ground. At the time, he was not wearing a safety rope or safety equipment. As a consequence, upon hitting the ground he suffered severe injuries.

Following the accident, the appellant, acting in his own capacity and as guardian and next friend for his two infant children, sued Ms. Morris and Mr. Adkins for the injuries which he sustained. In bringing the action against Ms. Morris, he, in effect, claimed that he was acting as her agent or employee at the time the accident occurred. He also claimed that he was a non-trespassing entrant upon her land and that Ms. Morris owed him a duty of reasonable care, which was breached when she failed to require him to produce a copy of his license or insurance policy and failed to say anything about his lack of safety equipment.

As has previously been indicated, Ms. Morris, as a defense, claimed that the appellant was not her agent or employee and that she was not legally responsible. In the course of the discovery, the appellant testified that he realized that there was a risk of falling out of the tree and injuring himself in the performance of the job. He stated that he did not feel that safety equipment was necessary since he did not feel that the job was unusu-

ally or abnormally dangerous. He also testified that Ms. Morris did not give him any instruction whatsoever as to how to cut the tree down or what to do. He indicated that the only instruction that he received was that the logs from the tree were to be placed in Ms. Morris' back yard as firewood. He also testified that Ms. Morris did not provide him with any equipment for the job. He did testify that it was his understanding that if Ms. Morris wanted him to stop the job, he would have an obligation to stop, and that if she had wanted to tell him how to perform certain aspects of the job because she was the person paying for it, he would have had an obligation to follow her instructions.

Ms. Morris, in her deposition, testified that it was her understanding that the tree was going to be cut down and that the stump was going to be removed. When hypothetically asked whether she had the right to tell the appellant to get his truck out of her yard if he happened to pull his truck into the yard, and she didn't like it, she testified, "I think yes, if he were doing something that I didn't think he should have been, but I wouldn't expect him to cut down a tree without having a truck in the yard. You see what I'm saying?" Later, she indicated that if he had been cutting the tree in some way she didn't like, it would be fair to say that she had the right to say, "I don't like the way you are doing this." She proceeded, however, to state that she gave no instructions other than what was to be done with the wood left over after the tree was cut.

Ms. Morris further testified that she understood that she was dealing with Mr. Adkins and that Mr. Robertson worked with him. She specifically stated: "I only dealt with Mr. Adkins," and, "I never discussed anything with Mr. Robertson [the appellant] or anyone else."

After the taking of the depositions, Ms. Morris moved for summary judgment, and on September 7, 1999, the circuit court granted that motion. In granting the motion, the court stated:

> I'm of the opinion that summary judgment is proper, that there was no duty on behalf of Mrs. Morris. She hired Mr. Adkins. Mr. Adkins hired the plaintiff to perform this work. There were misrepresentations made as to insurance and workers' comp matters made. Mrs. Morris made a proper inquiry into that matter and was told that they were in effect.

> In the brief there is some mention of inherently dangerous matters as to tree trimming and felling a tree. There is no indication that any exercise of power to control would consist of Ms. Morris telling who Mr. Adkins could fire or hire or have do the job. No indication of any control, therefore no duty and I'm going to grant summary judgment on behalf of the defendant Morris.

It is from the grant of summary judgment that the appellant now appeals.

## II.

### STANDARD OF REVIEW

■ This Court has indicated that a circuit court's entry of summary judgment is reviewed *de novo*. *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). The Court has also stated that: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

## III.

### DISCUSSION

One of the arguments made by the appellant in the present proceeding is that there was a question of material fact in the case as to whether he was acting as an agent of Ms. Morris at the time he was injured. He also argues that in light of the existence of such an issue, the trial court erred in granting summary judgment.

■ The question of whether the appellant was an agent or an employee or an independent contractor of Ms. Morris is significant because this Court has recognized while one may be responsible for physical harm caused

to his or her agent or employee, the Court has also recognized that, as a general proposition, one who hires an independent contractor is not responsible for injury resulting from an act or omission of the contractor or the contractor's servant. *Pasquale v. Ohio Power Company,* 187 W.Va. 292, 418 S.E.2d 738 (1992). And in the present case, it appears that the injury to the appellant was caused by his failure to use safety equipment.

■ Recently, in *Shaffer v. Acme Limestone Company, Inc.,* 206 W.Va. 333, 524 S.E.2d 688 (1999), this Court discussed the distinction between an agency relationship and an independent contractor relationship. In the discussion, the Court reiterated the principle previously stressed in *Pasquale v. Ohio Power Company, supra,* and *Sanders v. Georgia–Pacific Corporation,* 159 W.Va. 621, 225 S.E.2d 218 (1976), that in determining whether a workman is an agent or an employee or an independent contractor, the controlling factor is whether the hiring party retains the right to control and supervise the work to be done. The Court also discussed at length what constitutes the power to control and supervise the work to be done. The Court concluded that a hiring party could retain a broad general right of control over a party who did work for him without establishing an agency relationship. For instance, a hiring party could inspect the work, or stop it, or make suggestions or recommendations without changing the relationship from that of independent contractor to that of agent. Specifically, the Court stated in Syllabus Point 4 of *Shaffer v. Acme Limestone Company, Inc., supra,* that:

> An owner who engages an independent contractor to perform a job for him or her may retain broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the contract—including the right to inspect, to stop the work, to make suggestions or recommendations as to the details of the work, or to prescribe alterations or deviations in the work—without changing the relationship from that of owner and independent contractor, or changing the duties arising from that relationship.

Implicit in the *Shaffer* holding is the point that there is a distinction between the process of performing work and the outcome of work. A hiring party has the right to inspect work so as to judge its outcome, and to stop work, or to recommend alterations where the outcome is unsatisfactory or where it appears that the outcome will be unsatisfactory. The inspection or interference as to outcome is distinct from control of the process, and this Court believes that only if the hiring party assumes control of the process of work does the worker become the agent of the hiring party.

No evidence in the present case suggests that Ms. Morris exercised control over the process of the cutting of the tree on her premises. She discussed the overall project with Mr. Adkins and apparently indicated where the wood was to be stacked, but she was not even present when the actual work began. It, thus, appears, at most, she retained overall control of the project, a fact which under Syllabus Point 4 of *Shaffer v. Acme Limestone Company, Inc., id.,* would not convert her relationship with the appellant into an employment or agency relationship. Additionally, the fact that Ms. Morris might have hypothetically believed that she had the right to criticize how the work was to be done or its outcome cannot establish that she actually exercised control over the work.

This Court believes that Syllabus Point 4 of *Shaffer v. Acme Limestone Company, Inc., id.,* indicates that Ms. Morris did not engage in the types of acts which would convert her relationship with the appellant into an agency relationship, and that the circuit court properly concluded that no such relationship was established or could be established under the facts of the case.

■ The Court notes that in *Shaffer v. Acme Limestone Company, Inc., id.,* an exception to the general rule applies where one employs an independent contractor to do inherently dangerous work. Under that exception, the employing party may be liable for a worker's injury even if the employing party does not exercise control sufficient to convert the relationship into an employment or agency relationship—but this is true only

if the risk involved cannot be eliminated or significantly reduced by taking proper precautions.

The evidence adduced in the present case indicates that the risk of cutting the tree on Ms. Morris' premises, the risk which ultimately gave rise to the appellant's injury, could have been significantly eliminated or reduced by using safety ropes or safety equipment. Under such circumstances, the work was not so inherently dangerous as to bring into play the exception relating to inherently dangerous work discussed in *Shaffer v. Acme Limestone Company, Inc., id.*

■ The appellant also argues that the facts of the case raise a material issue of fact as to whether Ms. Morris violated her duty of care to him as a hiring landowner when she failed to require Mr. Adkins to produce, instead of simply asking him to produce, a copy of his license or insurance policy, and failed to say anything about the lack of safety equipment being used on the job.

In *Pasquale v. Ohio Power Company, supra*, this Court indicated that an owner of the premises owes to the servant of an independent contractor who works on the premises the duty to warn the servant of dangers on the premises which are not readily apparent, but are known or discoverable by the owner with the exercise of reasonable care.

In the present case, it appears that the immediate cause of the appellant's injury was his failure to use safety equipment and procedures in tackling the work involved in cutting the tree. The Court believes that it is common knowledge that the cutting of any tree entails hazards, and there is no evidence in the present case suggesting that there was any latent defect in the tree which the appellant was cutting which caused his injury. In light of this, the Court therefore believes that the appellant's claim relating to failure-to-warn claim is without merit.

For the reasons stated, this Court believes that there were no genuine issues of material fact at the time the circuit court entered summary judgment, and that under the circumstances of the case, summary judgment was proper. The judgment of the Circuit Court of Cabell County is, therefore, affirmed.

Affirmed.