561 S.E.2d 368

**James D. KIZER and Joyce Kizer,
Plaintiffs Below, Appellees,**

v.

**Charles HARPER, Defendant
Below, Appellant.**

No. 29694.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 2001.

Decided Nov. 28, 2001.

Dissenting Opinion of Justice
Davis Nov. 30, 2001.

Stephen P. Meyer, Meyer & Ford, Anne E. Shaffer, Charleston, for the Appellees.

Brent K. Kesner, Ellen R. Archibald, Kesner, Kesner & Bramble, Charleston, David A. Sims, Elkins, for the Appellant.

PER CURIAM.

Appellant Charles Harper seeks a reversal of the September 11, 2000, order of the Circuit Court of Kanawha County denying his post-trial motions for a new trial or judgment as a matter of law.[1] As grounds for the relief he seeks, Appellant argues that he was entitled to judgment as a matter of law because Appellees, James D. and Joyce Kizer, failed to prove a prima facie case of negligent hiring against him. In addition, Appellant asserts that the circuit court erred in denying his new trial motion based on various instructional errors, sufficiency of the evidence, and a generalized plea that a miscarriage of justice will result through enforcement of the judgment. Having carefully reviewed the record in this case, we find no reversible error and accordingly, we affirm.

## I. Factual and Procedural Background

Mr. Kizer, a CableComm employee, fell from an Appalachian Power Company utility pole on August 5, 1996, and sustained various injuries as a result of the fall.[2] Just before the fall, Mr. Kizer was working on cable strung from a utility pole which was located on property owned by Appellant's mother, Venila Harper. Mr. Kizer and his wife[3] brought suit against Appalachian Power, alleging that Mr. Kizer's injuries were the result of faulty wiring. The Kizers later amended their complaint to name Appellant and his brother, Ronald Harper, as defendants based on their actions in arranging for the wiring upgrade at their mother's home.[4]

By order entered March 29, 1999, the Kizers dismissed Appalachian Power as a defendant.[5] On October 12, 1999, the trial began in the Kizers' negligence action against Charles and Ronald Harper. Following the presentation of the Kizers' case-in-chief, the trial court directed a verdict in favor of Ronald Harper. The jury returned its verdict in favor of the Kizers on October 15, 1999, apportioning fault as follows: Appalachian Power—90%; CableComm—9%; Charles Harper—1%. The jury awarded damages in the amount of $1,299,000.01, for which Mr. Harper is liable under principles of joint and several liability.

Appellant filed his motion for a new trial or alternatively, judgment as a matter of law on October 25, 1999. As grounds for this motion, Appellant argued that the Kizers failed to present evidence establishing that Larry Vance, the "electrician" hired by Mr. Harper to install a circuit breaker box at his mother's home, committed an act of negligence which caused the Kizers' injuries, and further that the Kizers failed to establish that he was negligent in hiring Mr. Vance.[6] In addition, Appellant asserted that the trial court erred in ruling that the installation of a breaker box is an inherently dangerous activity; in giving the Kizers' instructions on an inherently dangerous instrumentality; and in refusing his proffered instruction on the independent contractor defense. Finally, Appellant maintained that it was error for the trial court to permit the Kizers to read the deposition testimony of Larry Vance into the record in this case, on the grounds that Mr. Vance was not an unavailable witness under the rules of civil procedure.[7] After hearing

---

1. Although the lower court, in its order of September 11, 2000, identified and ruled upon Appellant's motion as a motion seeking judgment notwithstanding the verdict, Appellant properly labeled his motion as a request for judgment as a matter of law. *See* W.Va. R. Civ. P. 50(b); *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 482 n. 7, 457 S.E.2d 152, 159 n. 7 (1995) (stating that "Rule 50 of the West Virginia Rules of Civil Procedure was amended in 1998, and the term 'directed verdict' was replaced with the phrase 'judgment as a matter of law' ").

2. Mr. Kizer sustained a broken right wrist; a broken right femur and hip; a broken bone in his lower left leg; and a broken left knee.

3. Mrs. Kizer brought suit against Appalachian Power for loss of consortium.

4. The Kizers did not name Mrs. Harper, the property owner, or the allegedly negligent electrician, Larry Vance, as defendants.

5. In that same order, the circuit court dismissed Charles Harper's cross-claim and claim for indemnity and/or contribution against Appalachian Power.

6. Plaintiffs' theory of the case below was that Mr. Vance improperly installed the circuit breaker box by failing to hook up a neutral wire.

7. *See* W.Va. R. Civ. P. 32(a)(3).

oral argument on these issues, the trial court denied Appellant's motions for post-trial relief by order entered on September 11, 2000. Through this appeal, Appellant seeks a reversal of the lower court's denial of his post-trial motions.

## II. Standard of Review

■ The standard of review governing the denial of Appellant's motion for judgment as a matter of law is the same standard previously applied to rulings concerning motions for judgment notwithstanding the verdict.[8] That standard, as we explained in syllabus point one of *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994), requires that

> in ruling on a motion for a judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of this Court to reverse the circuit court and to order judgment for the appellant.

*Id.* at 347, 452 S.E.2d at 438, syl. pt. 1, in part. We expanded upon this standard by holding in syllabus point three of *Alkire v. First National Bank*, 197 W.Va. 122, 475 S.E.2d 122 (1996), that

> [t]he granting of a motion for judgment notwithstanding the verdict is reviewed *de novo*, which triggers the same stringent decisional standards that are used by the circuit courts. While a review of this motion is plenary, it is also circumscribed because we must review the evidence in a light most favorable to the nonmoving party.

Our reviewing standard for denial of a new trial motion was articulated in *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995):

We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Id.* at 104, 459 S.E.2d at 381. With these principles in mind, we proceed to review this case.

## III. Discussion

### A. Failure to Grant Judgment as Matter of Law

■ In support of Appellant's argument that the lower court committed error by not awarding him judgment as a matter of law, Appellant maintains that the Kizers failed to prove a *prima facie* case of negligent hiring against him. Notwithstanding the introduction in evidence of a statutory violation concerning electrical work performed by an unlicensed individual,[9] Appellant argues that the Kizers still had to prove that he was negligent in hiring Mr. Vance to perform electrical work at his mother's house. In short, Appellant contends that *prima facie* proof of a statutory violation related to licensing was not the equivalent of *prima facie* proof of negligent hiring.[10]

■ Under West Virginia law, a "[v]iolation of a statute is *prima facie* evidence of negligence." Syl. Pt. 1, in part, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990); *accord Spurlin v. Nardo*, 145 W.Va. 408, 415, 114 S.E.2d 913, 918 (1960). "In order to be actionable," however, "such violation must be the proximate cause of the plaintiff's injury." Syl. Pt. 1, in part, *Anderson*, 183 W.Va. at 79, 394 S.E.2d at 63; *accord Waugh v. Traxler*, 186 W.Va. 355, 358, 412 S.E.2d 756, 759 (1991). As we explained in *Traxler*, " '[o]nly

---

8. We explained in *Barefoot, supra*, that "[t]he amendment [of Rule 50] did not ... affect either the standard by which a trial court reviews motions under the rule or the standard by which an appellate court reviews a trial court's ruling." 193 W.Va. at 482 n. 7, 457 S.E.2d at 159 n. 7.

9. *See* W.Va.Code § 29–3B–2 (2001).

10. We discussed and adopted a cause of action for negligent hiring or selection in *Thomson v.*

*McGinnis*, 195 W.Va. 465, 465 S.E.2d 922 (1995), holding that one who undertakes to hire an independent contractor who is not careful or competent can be held liable for resulting damages caused by the independent contractor if the hiring entity is negligent in the selection and retention of the independent contractor. *Id.* at 471–72, 465 S.E.2d at 928–29.

a rebuttable prima facie presumption of negligence arises on a showing that the statute was violated.'" *Id.* at 358, 412 S.E.2d at 759 (quoting *Flanagan v. Mott*, 145 W.Va. 220, 226, 114 S.E.2d 331, 335 (1960)).

The statutory violation in issue in this case was a licensing statute governing the performance of electrical work in this state. Under West Virginia Code § 29-3B-2 (2001), "no electrical work may be performed, offered or engaged in for compensation or hire ... unless such person ... possesses a license and a certificate...." A separate statute, West Virginia Code § 55-7-9 (1923) (Repl. Vol.2000), provides that "[a]ny person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation...."

■ We concur with Appellant's contention that proof of a statutory violation, in this case a licensing violation as Mr. Harper was not a licensed electrician, is not sufficient to establish negligent hiring. *See Thomson v. McGinnis*, 195 W.Va. 465, 465 S.E.2d 922 (1995) (setting forth cause of action for negligent hiring or selection). Nonetheless, we are still without a basis to find error on this issue for two reasons. First and foremost is the fact that proof of the statutory violation did get the Kizers' claim of negligence before the jury. Once the statutory violation was demonstrated, and there is no dispute regarding the fact of the violation, it was up to Appellant to rebut the presumption of negligence that was created. Whether Appellant rebutted this presumption of negligence was a matter for the jury.[11] *See Traxler*, 186 W.Va. at 358, 412 S.E.2d at 759; *accord Spurlin*, 145 W.Va. at 415, 114 S.E.2d at 918 (stating that "entire matter is a question for jury determination" where statutory violation relating to operable brakes was demonstrated). A jury question was also presented by virtue of the need to determine whether the Kizers' injuries were proximately caused by the statutory violation, as we explained in *Anderson:*

While a statutory violation gives rise to a *prima facie* case of negligence, "'the determination as to whether there was in fact a violation and whether the violation was the proximate cause of the injury is within the province of the jury.' Syllabus Point 3, *Simmons v. City of Bluefield*, [159] W.Va. [451], 225 S.E.2d 202, 88 A.L.R.3d 105 (1975)." Syllabus Point 3, in part, *Jones v. Two Rivers Ford, Inc.* 171 W.Va. 561, 301 S.E.2d 192 (1983).

183 W.Va. at 90, 394 S.E.2d at 74.

■ Our second basis for denying Appellant relief from the lower court's ruling arises from the parties' failure to submit any special interrogatories to the jury. While the Kizers were required to connect the acts of negligence upon which they sued to the statutory violation to prove negligent hiring, the absence of special interrogatories separating these two issues prevents us from concluding that the jury did not determine, as part of their finding of negligence, that the statutory violation was the proximate cause of the injuries suffered by the Kizers. By allowing the jury to resolve the issue of negligence without first making the underlying connection to the statutory violation through the use of special interrogatories, and in light of the fact that we are required to view this issue in the light most favorable to the non-moving party, we must presume that the jury did find the necessary elements of proximate causation in reaching its verdict. *See Adkins v. Foster*, 187 W.Va. 730, 736, 421 S.E.2d 271, 277 (1992) ("Failure to submit a special interrogatory to the jury can lead to various unexpected areas of uncertainty upon appellate review of a jury verdict.") Accordingly, this Court has no basis from which to conclude that the lower court was in error in refusing to grant Appellant's motion for judgment as a matter of law.

### B. Failure to Grant New Trial

#### 1. Instructional Error

■ Appellant asserts error in connection with the trial court's giving and re-

---

**11.** The question of whether the Appellant's contrary evidence rebutted the *prima facie* case of negligence created by the statutory violation is solely a jury question since the primary purpose of the presumption created by the *prima facie* rule is to protect the proponent from an adverse dismissal or judgment as a matter of law. In any event, the proponent retains the burden of persuasion. *See generally* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 3-2 to -3(B) (3rd ed.1994).

fusal to give certain jury instructions. The law is clear regarding the discretion afforded a trial court in instructing the jury:

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. Pt. 4, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

■ With regard to a trial court's refusal to give an instruction, we have held that:

A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it

seriously impairs a defendant's ability to effectively present a given defense.

Syl. pt. 11, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

Appellant asserts error with the giving of Plaintiffs' Instruction Numbers 5, 6, 7, 9, and 10. Instruction Numbers 5 [12] and 6 [13] deal with prima facie negligence and the violation of the licensing statute governing electrical work performed in this state. Appellant argues that Instruction Numbers 5 and 6 misstate the law by declaring that lack of an electrical license is proof of negligent electrical work and by not requiring the jury to find that the lack of an electrical license was the proximate cause of the Kizers' injuries. Neither Instruction Number 5 nor Instruction Number 6 states the law as Appellant represents with regard to permitting a conclusion of negligent electrical work to follow from proof of a statutory violation. Instruction Number 5 properly states the law with regard to a *presumption of negligence* arising from a statutory violation. This statement is clearly in accord with the law of *prima facie* negligence as announced on multiple occasions by this Court. *See Traxler*, 186 W.Va. at 358, 412 S.E.2d at 759; *Anderson*, 183 W.Va. at 79, 394 S.E.2d at 63, syl. pt. 1; *Spurlin*, 145 W.Va. at 415, 114 S.E.2d at 918; *Somerville v. Dellosa*, 133 W.Va. 435, 439, 56 S.E.2d 756, 760 (1949).

■ With regard to Instruction Number 6, Appellant takes issue [14] with the conclud-

**12.** Plaintiffs' Instruction No. 5, as amended, stated as follows:

The Court instructs the jury that under the laws of this State a violation of a West Virginia statute is prima facie evidence of negligence.

The term "prima facie negligence" as used in these instructions simply means such evidence as in this judgment of the law, is sufficient to establish a given fact or the group or chain of facts constituting the party's claim if not rebutted or contradicted.

**13.** Plaintiffs' Instruction No. 6, as amended, states as follows:

The Court instructs the jury that the Code of the State of West Virginia, Section 29–3–(b)–2 [sic] provides:

"No electrical work may be performed, offered or engaged in for compensation or hire within the State of West Virginia by any person, firm, or corporation unless such person, firm or corporation possesses a license and a certificate therefor, issued by the State Fire

Marshall in accordance with this article, and a copy of such license posted on any job in which electrical work is being performed for hire.

As used in this article; "electrical work" means the installation of wires, conduits, apparatus, fixtures or other appliances, equipment or systems for transmitting, carrying, controlling, or using electricity for light, heat or power purposes.

The Court further instructs the jury that one who violates the statute is guilty of prima facie negligence. Therefore, if you believe by a preponderance of the evidence in this case that Larry Vance did "electrical work" for hire then you may find that Larry Vance, at least, was guilty of negligence, unless there is sufficient evidence to rebut such presumption.

**14.** Appellant did not object to Plaintiffs' Instruction Number 6 on the grounds that the instruction failed to include language regarding the

ing statement, which instructs that "if you believe by a preponderance of the evidence in this case that Larry Vance did 'electrical work' for hire then you may find that Larry Vance, at least, was guilty of negligence, unless there is sufficient evidence to rebut such presumption." Appellant maintains that this sentence permitted the jury to "presume[ ] negligent wiring based solely on lack of a license" and further that the instruction lacks language "requir[ing] the jury to find that Vance's lack of a license proximately caused Kizer's injuries." While this portion of the instruction could have been worded more artfully, the instruction does incorporate the critical concept that *prima facie* negligence can be rebutted. And, as far as the statement that permits a finding of *prima facie* negligence to flow from the violation of a statute, that is a correct statement of the law. While Appellant suggests that the instruction wrongly directs the jury that they may find negligent wiring from a violation of a licensing statute, the instruction clearly refers to a finding of only *prima facie* negligence given the inclusion of the rebuttable presumption language. As to the absence of language within this instruction setting forth the additional element of causation as between the statutory violation and the plaintiffs' injuries, Appellant offered no language to clarify this aspect of proof in the form of either an amendment to this instruction or as a separate proximate causation

instruction.[15] *See Rodriguez v. Consolidation Coal Co.*, 206 W.Va. 317, 327, 524 S.E.2d 672, 682 (1999) (observing that Appellant's failure to offer a jury instruction constituted waiver of alleged error and precluded appellate review).

Plaintiffs' Instruction Number 7 provided that: "The Court instructs the jury that electricity is an inherently dangerous instrumentality and that its management requires a peculiarly high degree of care." This statement directly tracks language from our decision in *Miller v. Monongahela Power Co.*, 184 W.Va. 663, 668, 403 S.E.2d 406, 411, *cert. denied*, 502 U.S. 863, 112 S.Ct. 186, 116 L.Ed.2d 147 (1991). While the trial court struggled with determining whether the holding of *Miller* involving the "extraordinarily high duty of care owed by a power company to every member of the general public" applied to non-commercial settings— an issue which we do not reach today[16] and an issue which the lower court similarly avoided[17]—the limited statement contained in the instruction regarding the nature of electricity and the level of care required when working with electricity is nonetheless accurate. 184 W.Va. at 669, 403 S.E.2d at 412. And, as Appellees point out, Appellant stated "no objection" when plaintiffs' Instruction Number 7 was being approved by the trial court.[18]

need to establish proximate causation flowing from the statutory violation and causing plaintiffs' injuries. His concern below was that Instruction Number 6 was not in conformity with the court's earlier ruling that "all ... [Mr. Kizer] had to use was reasonable care in selecting the person."

15. Appellant's counsel indicated that he had no objection to the two general proximate causation instructions given. Counsel stated to the trial court "I don't have any objection because I'm out of it," referring presumably to liability.

16. Appellees maintain that it would be wrong for the Court to use this case to address the unresolved issue regarding the reach of the *Miller* decision because: (1) Appellant sought a ruling as a matter of law on the issue of whether electricity "is an inherently dangerous instrumentality"; (2) Appellant did not preserve an objection on this issue; and (3) the jury was instructed on two causes of action (negligent

hiring and nondelegable duty of independent contractor hiring individual to perform inherently dangerous activity), either one of which could have been the basis for their verdict. We agree that this case, due to its posture, is not the proper vehicle in which to resolve the reach of *Miller*.

17. Judge Canady clearly questioned whether the holding of *Miller* extended to residential scenarios in ruling on Plaintiffs' Instruction Number 9, stating "I can't tell where the case law tends to draw the line ... whether it intends to reach all the way down to a residential wiring situation. But I've passed on that, and am going to find this case (*King v. Lens Creek* ) does apply."

18. While Appellant claims in his brief to have objected to Plaintiffs' Instruction Number 7, he fails to cite to any transcript reference in support of this contention and we have found no objection, standing or otherwise, upon our review of the record.

According to Appellant, the giving of plaintiffs' Instruction Number 7 "misstated the law by stating that the breaker box was inherently dangerous and that [Mr.] Harper had a duty of heightened care." Instruction number 7 did not extend the concept of an inherently dangerous activity to work on a circuit breaker box; the instruction refers to electricity as being the inherently dangerous activity. While Appellant sought and obtained a ruling from the lower court that "installing a breaker box is an inherently dangerous activity," no specific instruction was offered regarding this activity. Consequently, the jury was not instructed that work on a circuit breaker box was an inherently dangerous activity, and, for the reasons noted above, we do not address this issue at this time. Appellant's averment that Instruction Number 7 purports to extend an elevated duty of care to Mr. Harper is similarly without merit.

■ We consider Plaintiffs' Instruction Numbers 9 [19] and 10 [20] together as they address the non-delegable duty exception to the independent contractor rule and the duty to use reasonable care in selecting an independent contractor. We announced the law with regard to when a non-delegable duty arises in syllabus point two of *King v. Lens Creek Limited Partnership*, 199 W.Va. 136, 483 S.E.2d 265 (1996), stating that: "A principal has a non-delegable duty to exercise reasonable care when performing an inherently dangerous activity; a duty that the principal cannot discharge by hiring an independent contractor to undertake the activity." In challenging Instruction Number 9, Appellant argues that the trial court wrongly instructed the jury that breaker box installation is an inherently dangerous activity. The instruction does not attempt to identify the breaker box installation as inherently dangerous; instead it speaks in terms of an "activity involving electricity." The first paragraph in Instruction Number 9 is a restatement of syllabus point two of *King* and the second paragraph merely combines the facts of the case with the law from Instruction Number 7 (that electricity is inherently dangerous), to which Appellant stated "no objection," and the law relating to the non-delegable duty exception to the independent contractor rule. Concerning Plaintiffs' Instruction Number 10, the only objection that Appellant made was to the use of the term "electrical contractor." Because the trial court amended the instruction by inserting the term "independent" in front of "electrical contractor" and thus cured the only objection Appellant raised,[21] there is no preserved error with regard to Instruction Number 10. *See Shia v. Chvasta*, Syl. Pt. 1, in part, 180 W.Va. 510, 377 S.E.2d 644 (1988) (" 'No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun....' ") (quoting, in part, W.Va. R. Civ. P. 51).

With regard to the trial court's refusing to give Appellant's Instruction Numbers 11 and 12 pertaining to the independent contractor

---

19. Plaintiffs' Instruction No. 9, as amended, stated as follows:

The Court instructs the jury that in performing an inherently dangerous activity, a principal has a non-delegable duty to exercise reasonable care and that duty cannot be discharged by hiring an independent contractor to undertake that activity.

Therefore, if you believe that either [sic] Charles Harper hired an independent contractor to perform an activity involving electricity, then you may find that their duty of exercising reasonable care cannot be discharged by an independent contractor who they hired to undertake that activity, and that if the activity was negligently performed the negligence is chargeable to the defendant, Charles Harper.

20. *Plaintiffs' Instruction No. 10, as amended,* stated as follows:

The Court instructs the jury that the defendant, Charles Harper, is under the duty to use reasonable care in selecting an independent electrical contractor to perform electrical work. Therefore, if you believe that the defendant, Charles Harper, failed to use reasonable care in selecting an independent electrical contractor to work on the Berry Home and that as a result of the negligence of the independent electrical contractor, James D. Kizer was caused to receive an injury, then you may find the defendants [sic], Charles Harper, negligent.

21. Appellant stated that "[t]he law is you have to use reasonable care in selecting an independent contractor, not an electrical contractor." He concluded by stating, "[t]hat's my only objection."

rule, we find those instructions inapplicable given the exception to the rule which applied under *King. See* 199 W.Va. at 141, 483 S.E.2d at 270. Upon a full review of these instructional issues, we find no reversible error given that the instructions either accurately reflect the law, error was not properly preserved, or alternate instructions were not offered.

### 2. Reading of Deposition

■ Appellant complains[22] that the deposition of Mr. Vance should not have been read to the jury, arguing that he did not qualify as an unavailable witness. Mr. Vance, a Florida resident, attended the first three days of trial and then was no longer around when the Kizers called him as a witness on the fourth day of trial. The trial court ruled that, while not overwhelming in nature, there were sufficient "exceptional circumstances" to permit the reading of the deposition under Rule 32(a)(3)(E) of the West Virginia Rules of Civil Procedure. That provision permits the reading of a deposition, upon a showing of exceptional circumstances, "in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court." W.Va. R. Civ. P. 32(a)(3)(E). While the Kizers never took the opportunity to serve Mr. Vance with a subpoena during the first three days of trial, there was some discussion during oral argument that Mr. Vance's identity was not known until after he was no longer present in the courtroom.[23] Given the need for the deposition testimony of Mr. Vance to establish whether he did or did not have an electrician's license issued by this state, and due to the apparent inability of the Kizers to serve him with a subpoena, we find no error under the facts of this case in the trial court's finding of exceptional circumstances warranting the reading of the deposition.

### 3. Sufficiency of Evidence/Miscarriage of Justice

Appellant argues that there was insufficient evidence on the issue of negligent hiring. In support of his position, he cites *Robertson v. Morris,* 209 W.Va. 288, 546 S.E.2d 770 (2001), contending that *Robertson* stands for the proposition that the failure to ask to see an independent contractor's license or insurance policy *does not* constitute negligent hiring. No such finding was reached in that decision. In affirming a grant of summary judgment, and almost in passing, this Court simply identified the appellant's position that a question of fact arose regarding whether the hiring entity failure's to require the independent contractor "to produce, instead of simply asking him to produce, a copy of his license or insurance policy" was a violation of her duty of care. *Id.* at 292, 546 S.E.2d at 774. Rather than being a negligent hiring cause of action, however, *Robertson* was decided based upon general principles governing the distinction between an independent contractor and an employee. *See Shaffer v. Acme Limestone Co.,* 206 W.Va. 333, 524 S.E.2d 688 (1999); *Pasquale v. Ohio Power Co.,* 187 W.Va. 292, 418 S.E.2d 738 (1992). Accordingly, *Robertson* is both factually and legally inapposite.

■ Appellant contends that the only evidence that the jury considered on the issue of negligent hiring was the lack of license held by Mr. Vance. In addition to the absence of a license, Appellees introduced evidence that the compensation exchanged for the electrical work performed by Mr. Vance was either $40 or a case of beer. This Court has made clear that the issue of negligent hiring is an issue of fact for the jury. *Sipple v. Starr,* 205 W.Va. 717, 724, 520 S.E.2d 884, 891 (1999). And, in making that determination the jury considers whether "the exercise of reasonable diligence would disclose facts demonstrating that the contractor was clearly incompetent for the particular task contemplated." *Thomson,* 195 W.Va. at 472, 465 S.E.2d at 929. We cannot say on the record before us that the jury could not have determined that Mr. Harper, through "the exercise of reasonable diligence," could have

---

**22.** Appellees state that while this contention is raised in Appellant's brief, "it is not raised as a point of error."

**23.** This was apparently due to the fact that the deposition of Mr. Vance was taken by telephone due to his Florida residency at the time of the deposition.

learned that Mr. Vance was not competent to do electrical work by inquiring as to the existence of an electrician's license. *Id.* Accordingly, we find no merit in Appellant's contention that the jury did not have sufficient evidence before them from which to make a finding of negligent hiring.[24]

As a final attempt to convince the Court to grant his requested relief, Appellant argues that a miscarriage of justice will result if the judgment order is permitted to be enforced. In making this assertion, Appellant maintains that the jury verdict was "against the clear weight of the record." Because we do not find the verdict to be without supporting evidence,[25] we find no resulting miscarriage of justice through its enforcement.[26] *See* Syl. Pt. 3, *In re State Public Bldg. Asbestos Litig.*, 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied sub nom W.R. Grace & Co. v. West Virginia*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

Based on the foregoing, the decision of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

DAVIS, Justice, dissenting.

(Filed Nov. 30, 2001)

In this case the majority opinion upholds a jury verdict of $1,299,000.01 against a homeowner, Mr. Harper, for the alleged negligent work of an electrician that caused injury to the plaintiff, Mr. Kizer.[1] With this decision, the majority opinion has expressly and implicitly ruled that West Virginia homeowners are strictly liable for work performed by independent contractors involving dangerous activities that causes injuries to third per-

sons. I do not believe that the majority opinion prudently addressed and resolved the issues in this case. For the reasons set forth below, I dissent.

### A. Mr. Harper Was Entitled to Judgment as a Matter of Law

The majority opinion concluded that Mr. Harper was not entitled to post-trial judgment as a matter of law. I disagree for two reasons. First, the analysis used by the majority opinion is flawed and does not support its conclusion. Second, the evidence submitted at trial necessitated granting to Mr. Harper judgment as a matter of law.

*1. Flawed analysis.* The majority opinion agreed with Mr. Harper's "contention that proof of a statutory violation, in this case a licensing violation . . ., is not sufficient to establish negligent hiring." However, after conceding this fact, the majority opinion states that two reasons prevent Mr. Harper from prevailing. As to the first reason, the majority opinion concludes that proof of a statutory licensing violation permits the negligent hiring issue to go to the jury, and thus, a jury question was presented as to whether the statutory violation was the proximate cause of the plaintiff's injuries.

The first reason tendered by the majority opinion says nothing. Mr. Harper's argument does not question the propriety of sending the issue to the jury. Instead, Mr. Harper attacked the jury verdict, based upon the evidence presented. Accordingly, an analysis of Mr. Harper's argument in the context of whether a jury issue was presented is unsound. Such an analysis would be

**24.** And, as Appellees repeatedly state, because the jury had two theories under which to find negligence against Appellant, either negligent hiring or the non-delegable duty exception to the independent contractor rule, we cannot know, due to the lack of special interrogatories, which theory they applied in reaching their determination of liability.

**25.** We reject without discussion Appellant's assertion that the Kizers failed to introduce evidence to prove that Mr. Vance was negligent in performing electrical work at Mrs. Harper's home. While the facts surrounding the electrical work were in dispute, the jury was presented

with sufficient evidence from which they could make such a finding.

**26.** This Court is not unmindful of the fact that Appellant, who was charged with only 1% fault, is being held liable for the full verdict under principles of joint and several liability. Despite the seeming inequity of this result, we cannot, without turning the tort law of this state "on its head," reach a contrary result. *Miller*, 184 W.Va. at 671, 403 S.E.2d at 414.

**1.** I have characterized Mr. Harper as the homeowner even though the electrical work was actually performed on his mother's home.

applicable only if Mr. Harper had alleged that the trial judge should have granted a pre-verdict motion for judgment as a matter of law.

The second ground used by the majority opinion to deny Mr. Harper relief is equally disingenuous. The majority contends that special interrogatories should have been submitted to the jury "to connect the acts of negligence upon which they sued to the statutory violation to prove negligent hiring[.]" According to the majority, because such interrogatories were not submitted, it was unable to conclude "that the jury did not determine, as part of their finding of negligence, that the statutory violation was the proximate cause of the injuries[.]"

In the context used by the majority opinion, the issue of special interrogatories is irrelevant as to whether there was sufficient proof to find negligent hiring. The issue presented by Mr. Harper required this Court to review the evidence.

As previously indicated, the majority opinion concedes that proof of a statutory violation was insufficient to establish negligent hiring. In the face of this concession, the majority nevertheless opines that the jury could have determined that the statutory violation was the proximate cause of the injury in this case. I cannot understand such reasoning. How is it possible that a statutory violation is *insufficient,* standing alone, to establish negligent hiring; yet a statutory violation is *sufficient,* standing alone, to be the proximate cause of the injury for which Mr. Harper was held liable? In other words, until negligent hiring was established, the issue of proximate cause could not be resolved.

**2. The evidence submitted at trial on the issue of negligent hiring.** I have attempted to show that the majority opinion's rationale for affirming the trial court's denial of Mr. Harper's post-trial motion for judgment as a matter of law was tortured. The majority reached its result primarily by refusing to examine the evidence.

For example, at trial, the plaintiff presented evidence to show that the electrician, Mr. Vance, did not have a statutorily required electrician's license. This was the only evidence submitted as proof of negligent hiring by Mr. Harper. Conveniently omitted from the majority opinion was Mr. Harper's evidence to show that he acted reasonably in hiring Mr. Vance. The record indicates that Mr. Harper's daughter referred Mr. Vance to him. Mr. Vance had worked as an electrician for the same employer as Mr. Harper's daughter. Also, there was evidence that Mr. Vance had twenty-three years of experience as an electrician. Finally, there was evidence that Mr. Harper had asked Mr. Vance if he was licensed. Mr. Vance indicated he had a proper license.[2] Based upon this evidence, the trial court should have granted Mr. Harper's post-trial motion for judgment as a matter of law.

Prior to this case, we have never required homeowners to do more than make a reasonable inquiry into licensure of professional independent contractors like Mr. Vance. Under the flawed reasoning of the majority opinion, homeowners must now go beyond merely asking an independent contractor if he or she is properly licensed to perform the work required.

**B. The Majority Opinion Makes All Homeowners Strictly Liable for Negligent Work by Electricians That Cause Injury**

Mr. Harper contended that the trial court committed error by giving a jury instruction that makes a principal liable for the negligence of an independent contractor in performing inherently dangerous activity. *See* Syl. pt. 2, *King v. Lens Creek Ltd. Partnership,* 199 W.Va. 136, 483 S.E.2d 265 (1996) ("A principal has a non-delegable duty to exercise reasonable care when performing an inherently dangerous activity; a duty that the principal cannot discharge by hiring an independent contractor to undertake the activity."). The majority opinion mischaracterizes Mr. Harper's argument by indicating that he based the argument on the grounds

2. Near the conclusion of the majority opinion it obliquely suggests that Mr. Harper failed to make any inquiry into whether Mr. Vance was li-

censed. However, the record shows that Mr. Vance "told Harper he was 'a licensed electrician, a certified electrician.'"

that the instruction incorrectly informed the jury "that breaker box installation is an inherently dangerous activity." A careful reading of Mr. Harper's brief shows that he did not make such an argument. His brief actually complained that the instruction "misstated the law by instructing the jury that Vance's alleged negligence could be 'chargeable' to Harper."

While the majority opinion asserted that it was not deciding whether electricity is an inherently dangerous activity in non-commercial settings, this determination was indeed made by the majority. Because the majority opinion approved of the trial court giving an instruction on the dangerous activity exception to the independent contractor rule, it is axiomatic that the majority opinion has concluded that electricity is an inherently dangerous activity in non-commercial settings.[3] Thus, the majority has opened the door to imputing liability for the negligent acts of independent contractors, performing inherently dangerous work, to non-negligent and unsuspecting homeowners.

Until this decision, this Court has never applied to a homeowner[4] the dangerous activity exception to the independent contractor rule. Clearly under the law as it heretofore existed in this State, Mr. Harper correctly argued that the instruction on the dangerous activity exception to the independent contractor rule should not have been given. This rule was intended for application to commercial enterprises, i.e., contractors and subcontractors, not to homeowners who hire independent contractors to do work on their homes. We have noted that "[t]he dangerous work exception to the independent contractor defense is that if the employer of the independent contractor knows the work is hazardous or dangerous, he cannot escape liability." *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 303 n. 18,

418 S.E.2d 738, 749 n. 18 (1992). Furthermore,

> [t]he exception is grounded in a recognition that the possibility of harm to others is so great when the work activity is inherently dangerous that the law tolerates it only on terms of insuring the public against injury. We impose vicarious liability under these circumstances to insure that the public has legal access to a financially responsible party.

*Shaffer v. Acme Limestone Co.*, 206 W.Va. 333, 343, 524 S.E.2d 688, 698 (1999) (quoting *D.B. Griffin Warehouse, Inc. v. Sanders*, 336 Ark. 456, 465, 986 S.W.2d 836, 840–41 (1999)). *See also Peneschi v. National Steel Corp.*, 170 W.Va. 511, 521, 295 S.E.2d 1, 12 (1982) ("the employer of an independent contractor cannot insulate himself from liability to third parties for the consequences of the use of abnormally dangerous instrumentalities by employing an independent contractor.").

The ultimate effect of the majority decision is to subject all West Virginia homeowners to strict liability for work on their home that involves dangerous activity and causes injury to a third person. *See Justus v. Swope*, 184 Mich.App. 91, 457 N.W.2d 103, 104 (1990) ("The inherently dangerous activity doctrine is something akin to strict liability."). Under the majority decision, it becomes irrelevant whether the independent contractor hired by a homeowner is properly licensed. Simply put, I do not believe that our law should make homeowners strictly liable for work negligently performed by independent contractors.

The position that I am taking was also taken by the Michigan Court of Appeals in *Justus v. Swope*. The decision in *Justus* involved a law suit brought against a homeowner by an employee of an independent contractor. The employee was injured while removing a tree from the homeowner's yard.

---

3. The dangerous activity exception to the independent contractor rule may only be invoked for work considered inherently dangerous.

4. In a footnote, the majority opinion stated that, because no special interrogatory was given on the issue of negligent hiring and the dangerous activity exception to the independent contractor rule, the Court was unable to determine upon

which theory of liability the jury has based its decision. However, as I have illustrated, the plaintiff presented no evidence sufficient to establish negligent hiring for liability purposes. Therefore, it is quite obvious that liability could only be found under the erroneously given instruction on the dangerous activity exception to the independent contractor rule.

The trial court granted summary judgment to the homeowner. On appeal, the employee argued that the dangerous activity exception to the independent contractor rule applied. Therefore, summary judgment was inappropriate. The appellate court disagreed. The court indicated that for public policy reasons, the dangerous activity exception to the independent contractor rule could not be imposed upon a homeowner. The appellate court reasoned as follows:

It is not reasonable, nor in the public interest, to expect a mere homeowner to be cognizant of, or liable for, the "special dangers" or "peculiar risks" to employees of an independent contractor where he has no knowledge of the normal procedures involved in the activity, he has no knowledge of, or capability to provide, proper safety precautions, and where the independent contractor and his employees are more knowledgeable than the homeowner about the activity, risks and necessary safety precautions. It is not reasonable to expect that a homeowner be required to educate himself as to the procedures and risks involved in activities such as tree removal, furnace maintenance, carpentry, or the like, to be performed at his home by an independent contractor. In essence, we must make a policy determination on whether the public interest is best served by imposing liability in a case such as this on a private homeowner, as opposed to the "expert" he hired to carry out the task at hand. We do not believe that imposing such liability on a private homeowner would be in the public interest.

*Justus*, 457 N.W.2d at 106.

In view of the foregoing, I respectfully dissent from the majority decision in this case. I am authorized to state that Justice Maynard joins me in this dissenting opinion.