ROGERS v. PARKER.

1. NEGLIGENCE — MASTER AND SERVANT — INDEPENDENT CONTRACTOR—NEGLIGENCE IN SETTING FIRES.

The owner of land who agrees with a tenant to pay a specified sum per acre for clearing his land, is not liable, as for the neglect of a servant, for damage done by the tenant in setting fires which escaped on adjacent property, the relation being that of an independent contractor.

2. SAME—INDEPENDENT CONTRACTOR—BURNING BRUSH, ETC.

If the thing to be done is in itself unlawful, or if it is *per se* a nuisance, or if it cannot be done without doing damage, he

who causes it to be done by another, be the latter servant, agent, or independent contractor, is as much liable for injuries which may happen to third persons from the act done as though he had done the act in person.[1]

3. SAME—NEGLIGENCE—ESCAPE OF FIRE.
   Setting of fires in the process of cultivation is not unlawful.

4. SAME—STATUTES.
   3 Comp. Laws, §§ 11653-11658, creates a liability for the escape of fires from the owner's premises, when it is the result of personal negligence or a wilful act.

Error to Grand Traverse; Mayne, J. Submitted October 15, 1909. (Docket No. 101.) Decided December 30, 1909.

Case by Martin Rogers and another against George W. Parker for negligently allowing fire to escape upon plaintiff's premises. A judgment for plaintiffs is reviewed by defendant on writ of error. Reversed.

*John W. Patchin,* for appellant.

*Lester D. Welch,* for appellees.

BLAIR, C. J. Action on the case to recover damages for destruction of property on plaintiffs' farm by fire alleged to have been negligently permitted to escape from defendant's premises. Defendant, being the owner of a tract of 80 acres, of which about one-half was cleared land, and the other half wild land, made a verbal arrangement with one Crawford, whereby Crawford was to crop the land for two-thirds of the crop. After Crawford had gone into possession, defendant agreed that "he would give me three dollars an acre for all the land I would clear." There was a conflict in the evidence as to whether the original agreement covered the entire 80 acres or only the cleared portion, and it was open to the jury to find that defendant retained control of the wild

---

[1] As to who are independent contractors, see note to *Richmond* v. *Sitterding* (Va.), 65 L. R. A. 445.

land. There was no agreement binding Crawford to clear any specified amount or any amount of land, and there was testimony to the effect that defendant arranged with one Smith, with reference to this same wild land, that he could clear all the land he wanted for one crop. Plaintiffs' farm joined defendant's 80 acres on the north. Crawford cleared a few acres, and, in the course of his work, burned up the refuse, having fires going most of the spring, and there was a fire of his setting which escaped from the land being cleared, made its way across the intervening wild land to plaintiffs' land, and injured their property. Defendant testified:

" *Q.* State whether or not you knew at any time that Mr. Crawford was setting. fires that were spreading, or liable to spread, on land that was not cleared.

" *A.* I didn't know that it was spreading. I knew that he was firing over there. It is a common method of clearing land in this country, after it has been logged and brushed, to set fires to the brush heaps and logs. No one had given me any notice during the summer that there were fires upon my land that were liable to spread upon theirs. I may have been to my place where Mr. Crawford was five or six times during the summer."

Defendant lived at the village of Kingsley, two miles from the farm, where he was engaged in conducting a general store. At the time plaintiffs' premises were fired, it was quite dry, and a high wind was blowing from the south.

At the close of plaintiff's testimony, and again at the close of the case, defendant's counsel moved for a directed verdict, upon the ground, among others, that defendant was not liable, because the negligence, if any, was that of an independent contractor who had exclusive control of the work. The court refused to direct a verdict, but instructed the jury upon this question as follows:

" Now, in relation to the independent contract, there is no question in this case but that, from all the evidence, Mr. Crawford was to receive three dollars per acre for what he did, and that he is a careful person, and if this

land had been measured off and was adjoining the land of the plaintiff and the fire had escaped from the lands of the defendant, which this party had taken a contract to clear, directly upon the lands of the plaintiff, then there is no question but what the defendant would not be liable because there is no duty on his part to perform. Let us state that again, gentlemen, in another way: Suppose that this line between these two farms that these parties had fenced off a piece of land, and that the defendant had given Crawford an independent contract, under the circumstances which they claim in this case, to clear that land and fire had escaped from that land. Under these circumstances, I would have to direct you that there was no cause of action. But in this case there were no lands set off. There is a question whether Mr. Crawford was in actual possession of the unimproved lands, and actually the land which he did improve was some distance from the line, so that the fire, if you find it was the fire which came from the defendant's land and did the damage—that fire had to cross this land of defendant before it entered upon the land of the plaintiff, and that makes a different situation. It is for you to say, gentlemen—there is no question but what there was an independent contract—it is for you to say whether this intervening land was in the possession of Mr. Parker or in the actual and undisputed possession of Mr. Crawford. If Mr. Crawford was, for the time being, the owner of that land, by reason of the lease which was given for one year, then he would have no duty to be looking after it and anticipating that there was negligence on the part of Mr. Crawford. If, on the other hand, Mr. Parker was in the actual possession of that unimproved land, if he had it under his control and the lease did not cover it, as claimed by the plaintiff, then he would have a liability in the matter, provided you find that this fire escaped from this land which was being cleared upon this independent contract, upon the land of Mr. Parker—this unimproved land—and by his negligence escaped to the land of the plaintiffs."

Defendant brings the record to this court for review upon writ of error. We are of the opinion that the court erred in refusing to direct a verdict. The obligations of the parties under the arrangement to clear the land are not free from doubt, but defendant had licensed Crawford and Smith to clear up all of the wild land until he saw fit

to revoke their license. Under this license, they could begin upon any part of the land. They could clear an acre here and an acre there, or they could employ a large force and clear it all in one season. Until defendant revoked their license, they had such charge and control of the land as was necessary to enable them to clear it all if they saw fit. But, assuming that defendant's relation to the uncleared wild land remained unchanged, was his negligence sufficiently established by the testimony? There was no testimony whatever to charge him with knowledge that there was any fire upon his portion of the wild land, and, if he is to be held responsible, it must be upon the principle that, knowing the dangerous character of fire and its liability to escape and do damage unless preventive measures are taken, he must see to it himself that such precautions are taken. To so hold would be to abolish the doctrine of independent contractor with relation to fires, a doctrine which has received the approval of the courts in many well-considered cases. *Shute* v. *Township of Princeton*, 58 Minn. 337 (59 N. W. 1050); *St. Louis, etc., R. Co.* v. *Yonley*, 53 Ark. 503 (14 S. W. 800, 9 L. R. A. 604); *Ferguson* v. *Hubbell*, 97 N. Y. 507 (49 Am. Rep. 544); *Gillson* v. *Railway Co.*, 33 U. C. Q. B. 128; same case on appeal, 35 U. C. Q. B. 475; *Kellogg* v. *Payne*, 21 Iowa, 575.

It is true that it has been repeatedly held that the rule relieving the employer where the work has been committed to an independent contractor is subject to the well-established exceptions that:

" If the thing to be done is in itself unlawful, or if it is *per se* a nuisance, or if it cannot be done without doing damage, he who causes it to be done by another, be the latter servant, agent, or independent contractor, is as much liable for injuries which may happen to third persons from the act done as though he had done the act in person. So it is the duty of every person who does in person, or causes to be done by another, an act which from its nature is liable, unless precautions are taken, to do injury to others, to see to it that those precautions are

taken, and he cannot escape this duty by turning the whole performance over to a contractor. Of the same nature is the duty which the law imposes upon every person, who, for his own purposes, brings on his lands, and collects or keeps there, anything likely to do mischief if it escapes, to keep it in at his peril; and if he does not do so, he is *prima facie* answerable for all the damage which is the natural consequence of its escape." Mechem on Agency, § 747, and cases cited.

These distinctions were considered in the cases above cited and were held, as we think, properly, not to apply. The setting of fires in this State in the process of fitting lands for cultivation is a lawful and proper act, without which the extension of husbandry would have been greatly limited. The statute upon which plaintiffs' count in this suit recognizes the lawfulness of such fires, and only makes the owner of lands responsible for the escape of fire therefrom to the lands of another where such escape was wilfully or negligently permitted. In other words, the statute recognizes that, if the work is properly done, no injurious consequences will follow, and therefore only holds the owner liable where the work has been improperly done. This statute came under consideration in the case of *Boyd* v. *Rice*, 38 Mich. 599. In that case, while James Boyd, the owner of a farm, was absent from the State, his servant, William Boyd, without his knowledge or previous instructions, set fire to a stubble field, from which it escaped to adjoining lands. In the course of the opinion by Mr. Justice COOLEY, it was said:

"But while the defendant William Rice [Boyd] might be subject to an action at the common law for his negligence, it seems plain that he cannot be liable under this statute. It was not from his premises that the fire was negligently permitted to spread; and, this statute carefully restricts its penalties to him who wilfully or negligently permits the fire to pass from 'his own woods, prairies, or grounds' to the injury of another. William Boyd was not within its provisions. But it is quite as plain that James Boyd was not liable for the act of William Boyd, of which he had no knowledge, and for which it is

not pretended he was in fault. The private action for the recovery of double damages is only given where the misdemeanor has been committed, and there is no misdemeanor where the owner of the land has had no knowledge of the fire, and cannot be charged in respect to it with either wilfulness or negligence. He also may have been responsible at the common law for the fault of his servant, but the penal consequences are only imposed by this statute where there has been personal fault."

While plaintiffs did not claim double damages either in their original or amended declaration, and expressly waived such claim on the trial, they did amend their declaration so as to count on the statute, "being chapter 320, Compiled Laws of the State of Michigan of 1897, particularly sections 11653 and 11658 and all of the sections intervening." It seems evident that the liability of the owner of lands for negligently permitting fire to escape therefrom is predicated upon his knowledge of the existence of a fire thereon, or, at least, of knowledge of facts which would charge him with notice that the danger of such fire breaking out thereon was imminent. This record is barren of any such evidence, and a verdict should have been instructed for defendant.

The judgment is reversed, and a new trial granted.

GRANT, MOORE, MCALVAY, and BROOKE, JJ., concurred.