**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Maura D. Corrigan

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 23, 2004**

ROBERT F. DESHAMBO,

    Plaintiff-Appellee,

and                                      Nos. 122939-122940

JENNIFER M. GRANHOLM, Attorney General
of the State of Michigan, and MICHIGAN
DEPARTMENT OF COMMUNITY HEALTH,

    Intervening Plaintiff-Appellee,

v

NORMAN R. NIELSEN and PAULINE NIELSEN,

    Defendants-Appellants,

and

CHARLES W. ANDERSON,

    Defendant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, C.J.

    In this case, we consider whether the inherently dangerous activity doctrine has been properly extended to impose liability on landowners for injuries to employees of

independent contractors performing dangerous work. We hold that the Court of Appeals has improperly extended the doctrine, contrary to its original purpose, to include injuries to those involved in the performance of dangerous work. The purpose of the doctrine is to protect innocent third parties injured as a result of an inherently dangerous undertaking. Because plaintiff was an employee of an independent contractor rather than a third party, the doctrine does not apply in this case. We thus reverse the judgment of the Court of Appeals.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

Defendants Norman and Pauline Nielsen[1] own and reside on a 130-acre farm in Leelanau County, Michigan. The land is used primarily to farm corn and operate a cherry orchard. A neighbor manages the cherry tree operation, and defendants are not involved in pruning or cutting the trees. Defendants hired an independent contractor, Charles Anderson, to fell and delimb small poplar trees and to clean up the tops of trees that a previous logger had left on the property. Anderson, an experienced timber cutter,

---

[1] Plaintiff voluntarily dismissed his claims against defendant Charles W. Anderson. Because Anderson is not a party to this appeal, the term "defendants" refers only to the Nielsens.

had previously performed woodcutting for defendants. Under the arrangement between defendants and Anderson, Anderson would keep the tree tops for firewood and pay defendants for the poplar that he cut. The parties did not discuss how the felling and delimbing was to be performed.

Anderson hired plaintiff Robert DeShambo to help him with the work on defendants' property. On plaintiff's first day of work, he was delimbing trees when he heard someone yelling. Plaintiff turned around and saw a tree falling toward him as Anderson felled it. The tree hit plaintiff on the shoulder and then struck some logs on the ground, causing one log to spin, strike him in the back, and pin him between the log and the fallen tree. The incident has left plaintiff paralyzed.

Plaintiff filed a negligence action against defendants and Anderson, but subsequently dismissed his claims against Anderson.[2] Plaintiff alleged, inter alia, that defendants were liable for Anderson's negligence because timber cutting was an inherently dangerous activity. Defendants moved for summary disposition, arguing that plaintiff could not establish liability under any recognized exception to

_____

[2] The state of Michigan also intervened to recover funds paid through Medicaid for plaintiff's medical treatment.

3

the general rule precluding the liability of a landowner for injuries that an independent contractor negligently causes.

The trial court granted summary disposition for defendants, ruling that logging was not an inherently dangerous activity and that defendants were not sophisticated landowners knowledgeable of the risks inherent in cutting timber. The Court of Appeals reversed, concluding that a question of fact existed regarding whether defendants reasonably anticipated the risks inherent in logging.[3] The Court reasoned that defendants had previously hired logging companies to conduct tree removals on their property and that defendant Norman Nielsen had admitted that logging was risky. The Court further stated that because plaintiff presented evidence of the hazardous elements of logging, the determination whether logging is inherently dangerous is a jury question.

We granted defendants' application for leave to appeal, directing the parties to address "whether the 'inherently dangerous activity' doctrine has been appropriately extended beyond its original application to

---

[3] Unpublished opinion per curiam, issued October 22, 2002 (Docket Nos. 233853, 233854).

only third parties to extend liability to landowners and general contractors for injuries to *employees* of independent contractors doing dangerous work."[4]

## II. STANDARD OF REVIEW

Whether the "inherently dangerous activity" doctrine has been properly extended to include injuries to employees of independent contractors who are injured while performing dangerous work is a question of law that this Court reviews de novo. Likewise, we review de novo a lower court's decision on a summary disposition motion. *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364; 666 NW2d 251 (2003).

## III. ANALYSIS

It has been long established in Michigan that a person who hires an independent contractor is not liable for injuries that the contractor negligently causes. *Lake Superior Iron Co v Erickson*, 39 Mich 492, 496 (1878); *DeForrest v Wright*, 2 Mich 368, 370 (1852). Over time, exceptions to this general rule have developed, including

---

[4] 469 Mich 947 (2003). We ordered that this case be submitted together with *Ormsby v Capital Welding, Inc*, 471 Mich ___ ; ___ NW2d ___ (2004), which involves the relationship between the "common work area" and "retained control" doctrines and the effect of those doctrines on the general rule of nonliability for owners and independent contractors.

5

the "inherently dangerous activity" doctrine.  The class of persons protected under the doctrine has undergone a transformation since the doctrine's inception.

### A. Application of the *Inherently Dangerous Activity Doctrine* to Third Parties

Early cases giving rise to the inherently dangerous activity doctrine limited the exception to injuries to third parties.  In *Rogers v Parker*, 159 Mich 278; 123 NW 1109 (1909), this Court first discussed an exception to the general rule of nonliability for damages caused to a third party by an independent contractor's performance of an act likely to do harm to that third party.  The question before this Court was whether a landowner who employed an independent contractor to clear farmland was liable for damages to neighboring property resulting when a fire that the contractor had set spread to neighboring land.  This Court resolved the issue on statutory grounds, but discussed in obiter dictum the common-law principles that would have applied, stating:

> [T]he rule relieving the employer where the work has been committed to an independent contractor is subject to the well-established exceptions that:
>
> "If the thing to be done is in itself unlawful, or if it is *per se* a nuisance, or if it cannot be done without doing damage, he who causes it to be done by another, be the latter servant, agent, or independent contractor, is as

6

much liable for injuries which may happen *to third persons* from the act done as though he had done the act in person. So it is the duty of every person who does in person, or causes to be done by another, an act which from its nature is liable, *unless precautions are taken, to do injury to others, to see to it that those precautions are taken, and he cannot escape this duty by turning the whole performance over to a contractor*." [*Id.* at 282-283 (some emphases added).]

In *Inglis v Millersburg Driving Ass'n*, 169 Mich 311; 136 NW 443 (1912), this Court elaborated on the above common-law exception. In that case, agents of the defendant association had set fires on fairgrounds property in the defendant's possession to clear it, and the fires spread to the plaintiff's adjoining land, causing damage. This Court held that the defendant was estopped to argue that independent contractors, rather than the unincorporated association itself, were responsible for the damage, because it had not pleaded that defense or argued it at trial. *Id.* at 317-318. This Court opined in obiter dictum, however, that an exception would have applied to the general rule of nonliability of landowners for the actions of independent contractors. While this Court cited its decision in *Rogers* and various other formulations of the rule, perhaps the best articulation of the principle was as follows:

7

The doctrine of independent contractor, whereby one who lets work to be done by another, reserving no control over the performance of the work, is not liable to third persons for injuries resulting from negligence of the contractor or his servants, is subject to several important exceptions. One of these . . . is where the employer is, from the nature and character of the work, under a duty to others to see that it is carefully performed. It cannot be better stated than in the language used by Cockburn, C.J., in *Bower v. Peate*, 1 Q.B. Div. 321, 326, a leading and well-considered case. It is, 'that a man who orders a work to be executed, from which, in the natural course of things, injurious consequences *to his neighbor* must be expected to arise, unless means are adopted by which such consequences may be averted, is bound to see the doing of that which is necessary to prevent mischief, and cannot relieve himself of his responsibility by employing some one else—whether it be the contractor employed to do the work from which the danger arises, or some independent person—or to do what is necessary to prevent the act he has ordered done from becoming unlawful.' . . . This does not abrogate the law as to independent contractor. It still leaves abundant room for its proper application. 'There is,' as stated by Cockburn, 'an obvious difference between committing work to a contractor to be executed, from which, if properly done, no injurious consequences can arise, and handing over to him work to be done from which mischievous consequences will arise unless precautionary measures are adopted.'

"The weight of reason and authority is to the effect that, where a party is under a duty *to the public, or third person*, to see that work he is about to do, or have done, is carefully performed, so as to avoid injury to others, he cannot, by letting it to a contractor, avoid his liability, in case it is negligently done to the injury of another." *Covington, etc., Bridge Co. v. Steinbrock & Patrick*, 61 Ohio St. 215 (55 N.E. 618 [1899], and cases cited." [*Inglis* at 320-321 (citations omitted, emphasis added).]

8

Thus, the above rule, which has come to be known as the "inherently dangerous activity exception," is founded on the existence of a duty on behalf of the landowner, or employer of an independent contractor, and the duty must be of the type that is nondelegable. The employer or landowner must also be aware that the danger exists and that it necessarily involves danger to others. Notably, the type of danger contemplated by the *Inglis* Court was danger to *third parties* and not to those involved in the dangerous activity.

Over the next several decades, this Court reaffirmed that, under this doctrine, the landowner must itself owe some duty to the specific third party, that the negligent act that causes the injury cannot be collateral to the work contracted for, and that the injury that occurs must be reasonably expected by the landowner. See *Cary v Thomas*, 345 Mich 616; 76 NW2d 817 (1956); *Barlow v Kreighoff Co*, 310 Mich 195; 16 NW2d 715 (1944); *Grinnell v Carbide & Carbon Chemicals Corp*, 282 Mich 509; 276 NW 535 (1937); *Tillson v Consumers Power Co*, 269 Mich 53; 256 NW 801 (1934); *Watkins v Gabriel Steel Co*, 260 Mich 692; 245 NW 801 (1932); *Wight v H G Christman Co*, 244 Mich 208; 221 NW

9

314 (1928). Notably, under this Court's precedent, the doctrine applied only to third parties.

### B. Expansion of the *Inherently Dangerous Activity Doctrine* to a Contractor's Employees

In *Vannoy v City of Warren,* 15 Mich App 158; 166 NW2d 486 (1968), the Court of Appeals purported to expand the scope of the inherently dangerous activity doctrine to hold a landowner liable not to a third party, but to the estate of a deceased employee of an independent contractor. The Court expressly rejected the landowner's argument that the doctrine applied only to third parties and not to the employees of an independent contractor engaged in the inherently dangerous activity. *Id*. at 164-165. The Court stated that limiting the exception to third persons "violate[d] the absolute character of the duty . . . ." *Id*. at 164.

In *McDonough v Gen Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972), a plurality of this Court reversed a directed verdict for the defendant landowner, concluding that the inherently dangerous activity exception could be applied to impose liability on the owner for injuries to a subcontractor's employee. The plurality quoted Justice COOLEY's formulation of the rule that this Court cited in *Inglis*:

10

"'If I employ a contractor to do a job of work for me which, in the progress of its execution, obviously exposes others to unusual perils, I ought, I think, to be responsible, * * * for I cause acts to be done which naturally expose others to injury.'" [*McDonough* at 438, quoting *Inglis, supra* at 319, quoting 2 Cooley Torts (3d ed), p 109.]

Without explanation, the plurality assumed that the "others" quoted above included the contractor's employees and not only third parties.

Justice BRENNAN dissented,[5] contending that the inherently dangerous activity exception protects "strangers" and does not apply to "a plaintiff who was himself actively engaged in the inherently dangerous activity." *McDonough* at 453. His dissent stated:

The application of this well settled exception is clear in cases where the injured person is a *stranger* to the inherently dangerous activity. In *Inglis* [*supra*], the inherently dangerous activity was burning, and the plaintiff was a neighboring landowner; in *Grinnell* [*supra*], the danger was explosion, the plaintiff a purchaser of a stove; in *Watkins* [*supra*], the dangerous activity was elevated steel construction, the plaintiff a mason contractor; in *Olah v Katz*, 234 Mich 112 [207 NW 892] (1926), the danger was an open pit, the plaintiff a neighboring child; in *Detroit v Corey*, 9 Mich 165 (1861), the danger was an open ditch, the plaintiff a passer-by; in *Darmstaetter v Moynahan*, 27 Mich 188 (1873), the danger was a wall of ice in the roadway, the plaintiff a sleigh rider; in *McWilliams v Detroit Central*

---

[5] Justice T. G. KAVANAGH joined Justice BRENNAN's dissent.

11

*Mills Co*, 31 Mich 274 (1875), the danger was a railroad switching operation, the plaintiff a passer-by. . . .

Indeed, there are almost no cases which have come to notice in which the suit is brought by or on behalf of a plaintiff who was himself actively engaged in the inherently dangerous activity.

Those few precedents which are cited seem to be founded upon other grounds.

* * *

[T]he rule of liability is designed to protect innocent third parties injured by the execution of an inherently dangerous undertaking. The rule is not designed, nor was it ever intended to benefit the contractor who undertakes the dangerous work, or his employees.

Thus, if I employ a contractor to remove a tree stump from my yard by use of explosives, I am liable to my neighbor whose garage is damaged by the concussion. This is because it is I who have set the project in motion; it is I who have created the unusual peril; it is for my benefit that the explosives were used. As between myself and my neighbor, I ought not to be permitted to plead that it was the contractor's negligence and not my own which damaged his property.

But if the contractor should blow up his own truck, I should not be liable. He is the expert in explosives and not me [sic]. I had neither the legal right nor the capability to supervise his work. The same would be true if the contractor's workman had injured himself, or been injured by the carelessness of a fellow workman or the negligence of his employer. Neither the contractor nor his employees are "others", as contemplated in Cooley's statement of the rule. Indeed, they are privy to the contract which creates the peril.

The mischief of today's decision is not its result, but its logic. One assumes that a company like General Motors has no want of access

to expertise. It may well have safety engineers on its payroll far more knowledgeable about structural steel than the decedent's employer. But to predicate liability here on the *Inglis, Olah, Wight and Watkins* line of cases is to impose upon many, many other, less sophisticated defendants the same burden to attend to the safety of the employees of independent contractors. [*McDonough, supra* at 453-456.]

In *Bosak v Hutchinson*, 422 Mich 712, 724; 375 NW2d 333 (1985), this Court relied on *Vannoy* and *McDonough* for the proposition that the inherently dangerous activity exception has, on occasion, been applied to employees of contractors performing dangerous work. This Court did not provide further analysis of this issue, however, given its holding that assembling a crane after hours, the activity involved in that case, did not constitute a dangerous activity, but a routine construction activity. *Id.* at 728.

Further, in *Justus v Swope*, 184 Mich App 91; 457 NW2d 103 (1990), on which the trial court in the instant case relied, the Court of Appeals stated, "The inherently dangerous activity doctrine has, thus far, been found to impose liability in cases involving owners fully capable of recognizing the potential danger." *Id.* at 96, citing *McDonough, Vannoy,* and others. The Court declined to impose liability on "mere homeowners," *id.* at 96, for injuries that an employee of an independent contractor sustained while removing a dead tree from the homeowners'

13

yard.  The Court stated that it was unreasonable to expect the homeowners to be cognizant of the particular risks inherent in tree removal.  *Id*. at 97-98.  Thus, the Court seemingly would have imposed liability if the homeowners had been aware of such risks.  The Court opined that imposing liability in that case, however, was exactly the fear that Justice BRENNAN expressed in his dissent in *McDonough*.

## C. Analysis

The analysis in Justice BRENNAN's *McDonough* dissent is persuasive and consistent with the longstanding common-law principles discussed in our case law.  When a landowner hires an independent contractor to perform work that poses a peculiar danger or risk of harm, it is reasonable to hold the landowner liable for harm *to third parties* that results from the activity.  If an employee of the contractor, however, negligently injures himself or is injured by the negligence of a fellow employee, it is not reasonable to hold the landowner liable merely because the activity involved is inherently dangerous.  As Justice BRENNAN recognized, the inherently dangerous activity doctrine was designed to protect third parties, not those actively involved in the dangerous activity.

The Restatement of Torts echoes the above principle.

2 Restatement of Torts, 2d, § 416 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm *to others* unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.  [Emphasis added.]

Similarly, 2 Restatement of Torts, 2d, § 427 states:

> One who employs an independent contractor to do work involving a special danger *to others* which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused *to such others* by the contractor's failure to take reasonable precautions against such danger.  [Emphasis added.]

The text of the above provisions applies to "others."  The term "others" necessarily refers to persons other than those directly involved in the dangerous activity.

Moreover, all the illustrations in the Restatement pertaining to §§ 416 and 427 involve injuries to innocent third parties and not to those directly involved in the activity.  For example, the first illustration under § 416 provides:

> 1. A employs B, an independent contractor, to erect a building upon land abutting upon a public highway.  The contract entrusts the whole

15

work of erection to B, and contains a clause requiring the contractor to erect a sufficient fence around the excavations necessary for the erection of the building. It contains also a clause by which the contractor assumes all liability for any harm caused by his work. B digs the excavation but fails to erect a fence. In consequence, C, while walking along the highway at night, falls into the cellar and is hurt. A is subject to liability to C.

In the above illustration, C is an innocent third party and is not directly involved in the dangerous activity. Similarly, C in the following illustration under § 427 is an innocent third party:

3. A employs B, an independent contractor, to excavate a sewer in the street. B leaves the trench unguarded, without warning lights, and C drives his automobile into it in the dark. The danger is inherent in the work, and A is subject to liability to C.

Although a plurality of this Court in *McDonough* cited §§ 416 and 427 of the Restatement when discussing the inherently dangerous activity exception, the plurality failed to recognize that the term "others" refers to third parties, and not to those persons involved in the dangerous activity.

The Court of Appeals in *Vannoy* improperly extended the inherently dangerous activity doctrine to include employees of independent contractors. We thus overrule the Court of Appeals holding in *Vannoy*. We also reject this Court's obiter dictum in *Bosak* to the extent that it approved of

16

*Vannoy*'s extension of the doctrine. As our longstanding precedent, before *McDonough,* and the Restatement make clear, the inherently dangerous activity exception is limited to third parties.[6]

Further, as Justice BRENNAN recognized in *McDonough*, allowing liability to be imposed on landowners for injuries resulting to an independent contractor's employees will necessarily result in liability imposed not only on large corporations fully capable of assessing and providing safety precautions, but also on "less sophisticated" landowners who may be unaware of such dangers or unable to provide precautionary measures to avoid the inherent risk. Indeed, in many situations it may be the risk itself that prompts a landowner to hire an independent contractor in the first instance. A contractor who may specialize and routinely engage in the activity would likely be better able to perform the activity in a safe manner. Likewise, the contractor is probably better able to implement

---

[6] Our concurring colleague opines that an exception to this rule exists where a landowner retains control over the work performed and is in a position to ensure that the independent contractor takes adequate safety precautions. *Post* at 2. Because these circumstances are not presented in this case, we express no opinion regarding whether a landowner who has retained control over the dangerous work may be subject to liability for injuries to a contractor's employee caused by the contractor's negligence.

reasonable safety precautions for the protection of its employees who perform the dangerous work, and this duty accordingly lies with the contractor. We thus adhere to the established common-law principle that this Court had consistently followed before *McDonough*.

Because the inherently dangerous activity exception does not apply when the injured party is an employee of an independent contractor rather than a third party, the exception does not apply in the instant case. Accordingly, the trial court properly granted summary disposition for defendants.

## IV. CONCLUSION

We conclude that the inherently dangerous activity exception is limited to third parties and does not apply to employees of independent contractors injured while performing dangerous work. Because plaintiff was an employee of an independent contractor rather than a third party, the doctrine is inapplicable in this case. Accordingly, we reverse the judgment of the Court of Appeals.

Maura D. Corrigan
Michael F. Cavanagh
Elizabeth A. Weaver
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

18

ROBERT F. DESHAMBO,

    Plaintiff-Appellee,

and                                              Nos. 122939-122940

JENNIFER M. GRANHOLM, Attorney
General of the State of Michigan,
and MICHIGAN DEPARTMENT OF
COMMUNITY HEALTH,

    Intervening Plaintiff-Appellee,

v

NORMAN R. NIELSEN and PAULINE
NIELSEN,

    Defendants-Appellants,

and

CHARLES W. ANDERSON,

    Defendant.

_____

KELLY, J. (*concurring in result only*).

I agree with the result reached by the majority in this case. However, I write separately to point out that the majority takes no cognizance of the effect of its analysis when read together with its decision in *Ormsby v Capital Welding, Inc*, 471 Mich ___; ___ NW2d ___ (2004). I believe that our jurisprudence requires that a landowner

retaining control over the performance of inherently dangerous work should be liable for an injury to an independent contractor's employee. The decision in this case, when read with the decision in *Ormsby,* suggests otherwise.[1]

A landowner is generally not liable to the employee of a contractor for injuries caused by the contractor's negligence. *Ante* at 5. An exception has been made where the landowner retained control of the job site and inherently hazardous activities were undertaken.

The Court holds today that a landowner is not liable for a contractor's negligence that injures the contractor's employee engaged in an inherently dangerous activity. *Ante* at 14. The Court adopts Justice Brennan's dissenting analysis in *McDonough v Gen Motors*[2] and holds that the landowner has "'neither the legal right nor the capability to supervise [the independent contractor's] work.'" *Ante* at 12, quoting *McDonough* at 456. The landowner here is not alleged to have retained control of the job site.

---

[1] I dissented from the decision in *Ormsby* on the ground that the inherently dangerous activity doctrine and the retained control doctrine are distinct theories of tort liability.

[2] *McDonough v Gen Motors Corp*, 388 Mich 430; 201 NW2d 609 (1972).

As previously indicated, a landowner is liable to a contractor's employee if he retained control over hazardous work and was positioned to ensure that the contractor took adequate precautions. *Funk v General Motors Corp*, 392 Mich 91, 105; 220 NW2d 641 (1974), overruled in part on other grounds by *Hardy v Monsanto Enviro-Chem Systems, Inc*, 414 Mich 29; 323 NW2d 270 (1982).

The retained control doctrine is a distinct theory of liability. It applies where the entity engaging the services of the independent contractor has the legal right and the capability to supervise the work. *Plummer v Bechtel Constr Co*, 440 Mich 646, 659; 489 NW2d 66 (1992) (opinion by Levin, J). The doctrine is applicable regardless of whether the employer is a landowner or a general contractor.

This case was argued and submitted together with *Ormsby v Capital Welding, Inc.* The Court in *Ormsby* holds that the retained control doctrine, applied to general contractors who utilize subcontractors, is merely an element of the common work area doctrine. It is not an independent theory of liability. *Ormsby* at ___.

If *Ormsby* is held to apply to landowners, the decisions here and in *Ormsby,* read together, could have unfortunate unintended results in future cases. The

3

inference to be drawn from them is this: a landowner who retains control of inherently dangerous work on a job site will not be liable for injuries to a contractor's employee unless the injury occurred in a common work area. The majority denies the validity of this inference. *Id.* at ___, n 13. However, the opinion's language strongly belies that denial.

Under the tort-reform statutes, liability is almost always several only and not joint. MCL 600.2956. Legal liability is distinct from fault, although it is based on fault. Fault is determined by the trier of fact[3] who assigns it, regardless of whether a party can be held legally liable. MCL 600.6304(1). However, an injured party can recover only from a party that can be held legally liable.

Under the preceding tort-reform statutes, the trier of fact can assign fault to a landowner who has directed the actions of an independent contractor engaged in an inherently dangerous activity. The Court's opinions in *DeShambo* and *Ormsby* could be interpreted to hold that such a negligent landowner could escape all liability for injury caused to the employee of his contractor. The landowner

---

[3] MCL 600.2957(1).

4

cannot be held liable under the inherently dangerous activity doctrine. *DeShambo*. Neither can he be held liable under the retained control doctrine. *Ormsby*.

I believe that this result would be inconsistent with principles underlying the common law. Moreover, it would be inconsistent with the intent of the tort-reform statutes. A negligent actor is intended to be legally liable for his actions. The majority potentially undermines this principle with the holdings in these two cases. Absent language correcting this problem, the analysis in the majority opinion is unacceptable to me and I concur only in the result reached by the majority.

Marilyn Kelly