*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ISMAEL OLIVAN,

        Plaintiff-Appellant,

v

JOSE OLIVAN,

        Defendant-Appellee;
and

MOUNT VERNON FIRE INSURANCE
COMPANY,

        Defendant.

UNPUBLISHED
June 27, 2019

No. 343120
Macomb Circuit Court
LC No. 2016-003180-NO

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this appeal involving negligence and premises liability claims, plaintiff, Ismael Olivan, appeals by right from the trial court order granting defendant Jose Olivan's amended motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact; movant entitled to judgment as a matter of law).[1]  We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant are brothers.  At the time of the incident in question, defendant owned rental properties and plaintiff worked as an independent contractor on defendant's rental properties performing tasks such as general maintenance, painting, installing new sinks,

---

[1] A stipulated order entered October 13, 2016, dismissed defendant Mount Vernon Fire Insurance from the case.

cleanout, and lawn care. On November 17, 2014, plaintiff was performing a repair at one of defendant's rental properties that involved replacing a thermostat and relighting the furnace's pilot light. While attempting to relight the furnace pilot, a flash flame or flash fire occurred, causing plaintiff to suffer second-degree burns on his face and right arm. Plaintiff filed a complaint on September 6, 2016, asserting a claim for negligence, and a first amended complaint (FAC) on January 26, 2018, adding a claim for premises liability.

In his FAC, plaintiff alleged that he lacked the training, knowledge, and experience to do the required repair and defendant knew or should have known that and should not have instructed him to do anything he was not clearly qualified, certified, licensed, or prepared to perform. By insisting that plaintiff perform the repairs and instructing him how to do so, defendant "retained and exercised control" over plaintiff and was negligent, which resulted in plaintiff's injuries. With respect to his premises liability claim, plaintiff alleged that defendant had worked on the thermostat and furnace earlier the same day and had actual or constructive knowledge of its condition, which was a faulty thermostat and furnace that required repair. Plaintiff further asserted that the condition was not open and obvious, and that it posed a great risk of serious harm, requiring defendant to properly warn him of the dangerous condition present.

In an amended motion for summary disposition filed in response to plaintiff's FAC, defendant asserted that he was entitled to summary disposition of plaintiff's negligence claim because plaintiff had failed to establish the required elements of duty and causation and that the "retained control doctrine" was inapplicable as a matter of law and unsupported by the facts. Defendant argued that he was entitled to summary disposition of plaintiff's premises liability claim because a premises owner is not liable to independent contractors or their employees injured by the condition they came onto the property to repair. Defendant also contended that the open and obvious doctrine precluded plaintiff's recovery and that the condition was not unreasonably dangerous because performing the common household task of replacing a thermostat and relighting a furnace pilot is not likely to cause serious injury or death. Further, defendant asserted that plaintiff was free to walk away from the project if he felt uncomfortable doing it. Defendant also reiterated that plaintiff failed to establish the element of causation.

Plaintiff opposed defendant's amended motion for summary disposition by arguing that defendant had negligently selected him to work on a project for which he lacked the knowledge and experience and then had retained complete control by telling him what to do. Plaintiff reiterated his prior arguments that the specific dangerous condition of the thermostat and furnace was not open and obvious and it posed a uniquely high likelihood of serious harm. He also repeated his argument that it was unreasonable for defendant to have worked on the thermostat and furnace, left it in a faulty condition, and then ordered plaintiff to make repairs despite his lack of training and experience. Plaintiff further contended that defendant's argument regarding the lack of causation was based on speculation and conjecture and required the court to view the evidence in the light most favorable to defendant and to make credibility assessments improper on a motion for summary disposition. In his reply brief, defendant denied that giving instructions over the phone and being present for part of the repair job constituted retaining control over the work.

In a written opinion issued subsequent to a hearing, the trial court concluded that plaintiff failed to present genuine issues of material fact that defendant owed him a duty of care, that the condition of the thermostat and furnace was not open and obvious, or that special aspects rendered the condition of the thermostat and furnace unreasonably dangerous. Accordingly, the trial court issued a corresponding order granting defendant's amended motion for summary disposition.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Auto Club Group Ins Co v Burchell,* 249 Mich App 468, 479; 642 NW2d 406 (2002).

A motion made under MCR 2.116(C)(10) tests the factual support of a claim. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The moving party has the initial burden of supporting his position by affidavits, depositions, admissions, or other documentary evidence. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). The party opposing the motion then has the burden of showing by evidentiary materials that a genuine issue of material fact exists. *Id*. at 441. A mere possibility that the claim might be supported by evidence at trial is insufficient, *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999), as are speculation and conjecture, *Skinner v Square D Co*, 445 Mich 153, 172-173; 516 NW2d 475 (1994). The trial court should grant the motion when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10).

## B. NEGLIGENCE

"The elements of a prima facie case of negligence are (1) a duty, (2) a breach, (3) injury or damages, and (4) causation." *Campbell v Kovich*, 273 Mich App 227, 230; 731 NW2d 112 (2006). The existence of a duty is generally a question of law to be decided by the court. *Hoffner v Lanctoe*, 492 Mich 450, 476; 821 NW2d 88 (2012). The parties agree that plaintiff is an independent contractor and "that an employer of an independent contractor is not liable for the contractor's negligence." *Reeves v Kmart Corp*, 229 Mich App 466, 471; 582 NW2d 841 (1998). However, plaintiff argues that this general rule does not apply in the present case because it is premised on the employer's duty to hire a competent contractor and on independent contractors being the experts in the matters for which employers hire them. Plaintiff contends that defendant breached the duty to hire a competent contractor by engaging him to do the repairs, even though defendant knew plaintiff lacked the training, experience, or qualifications necessary to do the job. In addition, the fact that defendant knew more about how to make the required repairs than did plaintiff undermines the presumption that plaintiff was the expert. Plaintiff argues that in the absence of the premises undergirding the general rule, the general rule does not apply.

Plaintiff's argument fails first because Michigan does not recognize a duty requiring an employer to exercise care in the selection and retention of an independent contractor. This Court expressly addressed this issue in *Reeves*, where the plaintiffs relied on a statement in *Funk v Gen Motors Corp*, 392 Mich 91; 220 NW2d 641 (1974), overruled in part on other grounds by *Hardy v Monsanto Enviro-Chem Sys, Inc*, 414 Mich 29; 323 NW2d 270 (1982), to argue on appeal that

defendant Kmart breached its duty to the plaintiffs' decedents to hire a "carefully selected contractor" when hiring a waste-hauling firm. *Reeves*, 229 Mich App at 472, quoting *Funk*, 392 Mich at 101. The plaintiffs contended that because of this breach, one of the firm's poorly maintained waste disposal trucks caused the accident that resulted in the death of the plaintiffs' decedents. *Reeves*, 229 Mich App at 467-469. The plaintiffs argued that the *Funk* Court's "use of the words 'carefully selected' to modify 'contractor' imposes a duty of care upon an employer when selecting a contractor." *Reeves*, 229 Mich App at 472. Disagreeing, this Court deemed the statement dicta, explaining that the *Funk* Court resolved the issue before it without considering whether the defendant had "failed to use care in selecting its contractors" and that, in fact, "[t]he *Funk* Court did not address whether a general duty exists regarding the selection of an independent contractor." *Id.*

This Court rejected imposing a duty of careful selection on an employer because to do so arguably would create a "Catch-22" for employers. Employers who breached the duty could be liable in negligence, while those who undertook to investigate independent contractors to the extent advocated by the *Reeves* plaintiffs could be liable on a theory that they retained control over the matter for which they had hired the independent contractors. *Id.* In addition, this Court considered and rejected the plaintiffs' argument that Michigan had adopted § 411 of the Restatement of Torts, 2d, which subjects employers of negligently selected independent contractors to liability for physical harm caused by the independent contractors' negligence. The Court concluded, "Michigan has not recognized a duty requiring an employer to exercise care in the selection and retention of an independent contractor[,]" *Reeves*, 229 Mich App at 475-476, and held, "such a duty does not exist[,]" *id.* at 476. Therefore, pursuant to this Court's holding in *Reeves*, defendant did not owe plaintiff a duty of careful selection.

Plaintiff's assertion that the general rule of an employer's nonliability is inapplicable here because he was not more knowledgeable about furnace repairs than defendant also fails. In support of this argument, plaintiff points to statements in *Reeves* suggesting that employers hire independent contractors to do work in which employers are not experts. See e.g., *Reeves*, 229 Mich App at 473 ("Indeed, people generally hire independent contractors to do work that they do not have the time or the expertise to do themselves."). However, both common sense and the foregoing quotation from *Reeves* indicate that employers hire independent contractors not just to do jobs that the employers lack the expertise to do, but also to do jobs that the employers do not have time to do, or simply do not want to do. Thus, the fact that the employer might possess more expertise in a matter than the independent contractor hired to attend to the matter does not provide a reason for imposing a duty of careful selection on the employer.

Plaintiff next contends that, even if the general rule is applicable, defendant is nevertheless liable for his injuries under one of two exceptions to the rule. First, he contends that defendant is liable under the "inherently dangerous doctrine."

> The inherently dangerous activity doctrine provides an exception to the general rule of nonliability by the employer of an independent contractor. Under the doctrine, liability may be imposed when "the work contracted for is likely to create a peculiar risk of physical harm or if the work involves a special danger inherent in or normal to the work that the employer reasonably should have known about at the inception of the contract. [*Szymanski v K Mart Corp*, 196

-4-

Mich App 427, 431; 493 NW2d 460 (1992), vacated and remanded on other grounds, 442 Mich 912; 503 NW2d 449 (1993) (quotation marks and citation omitted).]

This exception "is limited to third parties and does not apply to employees of independent contractors injured while performing dangerous work." *DeShambo v Nielsen*, 471 Mich 27, 41; 684 NW2d 332 (2004). Thus, because plaintiff is not a "stranger to the work," but the independent contractor engaged to do the work, he cannot benefit from the inherently dangerous activity theory of liability. *Id*.

Next, plaintiff urges this Court to view the "retained control doctrine" as a theory of liability separate from the "common work area doctrine," and contends that if we did, he has presented sufficient evidence to raise a genuine issue of material fact regarding whether it applies in the case at bar.

The *Funk* Court established the "common work area doctrine" as an exception to the general rule at common-law that "property owners and general contractors could not be held liable for injuries resulting from the negligence of independent subcontractors and their employees." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004). In order to hold a general contractor liable for injuries under the common work area doctrine, a plaintiff must show that the general contractor failed to take "reasonable steps within its supervisory and coordinating authority . . . to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen." *Funk*, 392 Mich at 104; see also *Ormsby*, 471 Mich at 54. The *Funk* Court also held that a property owner could be held liable if the property owner "had 'retained control' in such a way that it had effectively stepped into the shoes of the general contractor and been acting as such." *Funk*, 392 Mich at 108; *Ormsby*, 471 Mich at 54.

Prior to 2004, several decisions from this Court applied the retained control and common work area exceptions as two separate exceptions. *Ormsby*, 471 Mich at 56 n 8 (citing several published opinions issued between 1976 and 1999 that distinguished and applied separately the doctrines of "retained control" and "common work area"). In *Ormsby*, however, Michigan's Supreme Court clarified that the *Funk* Court "was applying the identical 'common work area' doctrine analysis to GMC, as property owner, on the basis that it 'retained control.'" *Ormsby*, 471 Mich at 55. Thus, the Court held that "the 'common work area doctrine' and the 'retained control doctrine' are not two distinct and separate exceptions." *Id*.

> Rather, the former doctrine is an exception to the general rule of nonliability of property owners and general contractors for injuries resulting from the negligent conduct of independent subcontractors or their employees. Thus, only when the *Funk* four-part "common work area" test is satisfied may a general contractor be held liable for alleged negligence of the employees of independent subcontractors regarding job safety. The "retained control" doctrine is merely a subordinate doctrine, applied by the *Funk* Court to the owner defendant, that has no application to general contractors. [*Id*. at 55-56.]

Thus, pursuant to *Ormsby*, the retained control doctrine applies only when a project owner undertakes to act as its own general contractor *and* all of the elements of the common work area doctrine are present. Plaintiff concedes that he cannot meet the requirements of the common work area doctrine. Therefore, the retained control doctrine is inapplicable as a matter of law.[2]

In sum, plaintiff has failed to present a genuine issue of material fact that defendant owed him a specific duty of care, or to establish that the inherently dangerous activity theory or the retained control doctrine are applicable as a matter of law.[3]

## C. PREMISES LIABILITY

Plaintiff next contends that the open and obvious doctrine does not bar his premises liability claim because the specific condition of the furnace was not open and obvious, and plaintiff neither knew nor should have known that his attempt to light the furnace's pilot light would result in a flash fire and injury. Moreover, lacking the knowledge and experience to do the required work rendered the risk of fire and injury inordinately high, thus constituting a special condition. We find plaintiff's arguments unpersuasive.

To prevail on a premises liability claim, a plaintiff must prove the elements of negligence: duty, breach, causation, and damages. *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 693; 822 NW2d 254 (2012). Whether a legal duty exists is a question of law for the court to decide. *Id*. There is no dispute that plaintiff was on the premises as an invitee, i.e., a person "who enter[ed] the premises at the owner's express or implied invitation to conduct business concerning the owner[.]" *Butler v Ramco-Gershenson, Inc*, 214 Mich App 521, 532; 542 NW2d 912 (1995). "[A] landowner owes a duty to use reasonable care to protect invitees

---

[2] Plaintiff does not provide this Court with a convincing legal reason to consider the retained control doctrine separate from the common work area doctrine. In her partial dissent in *Ormsby*, Justice MARILYN J. KELLY provided a reasoned argument for treating the two doctrines as distinct theories of liability that reinforce distinct social norms. *Ormsby*, 471 Mich at 62 (KELLY, J., concurring in part and dissenting in part). "The retained control doctrine," wrote Justice KELLY, "applies to one who engages an independent contractor but retains actual control over the manner in which the work is performed. It imposes a duty to ensure that the contractor exercises due care for the safety of others." *Id*. at 62, citing 2 Restatement of Torts, 2d, § 414, p 387. By contrast, "[t]he common work area doctrine arises from the characteristics of common work areas and the efficiency of imposing responsibility on the entity that has responsibility over the entire area." *Ormsby*, 471 Mich at 62 (KELLY, J., concurring in part and dissenting in part), citing *Funk*, 392 Mich, at 104. The Supreme Court rejected Justice KELLY'S argument, and plaintiff has in no way improved upon it.

[3] Because the trial court did not err in granting summary disposition of plaintiff's negligence claim on these grounds, it is unnecessary for this Court to address defendant's alternate grounds for dismissal.

from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Hoffner*, 492 Mich at 460.

However, absent special aspects, a premises owner is not required to protect an invitee from dangers that are open and obvious. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001). Special aspects are present "when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable. In either circumstance*, such dangers are those that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided and thus must be differentiated from those risks posed by ordinary conditions and obvious hazards." *Hoffner*, 492 Mich at 463 (quotation marks and citations omitted). As the *Lugo* Court explained:

> if the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. [*Lugo*, 464 Mich at 516-517, quoting *Bertrand v Alan Ford, Inc*, 449 Mich 606, 611; 537 NW2d 185 (1995).]

"A plaintiff may not recover if the condition is ' "so common that the possibility of [its] presence is anticipated by prudent persons." ' " *Buhalis*, 296 Mich App at 694, quoting *Bertrand*, 449 Mich at 615,[4] quoting *Garret v W. S. Butterfield Theaters*, 261 Mich 262, 263; 246 NW 57 (1933). Plaintiff contends that the risks associated with relighting the furnace pilot were not open and obvious because he did not smell gas or detect any leaks and, therefore, there was no evidence that he knew or should have known that lighting the furnace would result in a flash fire. However, a reasonably prudent person of ordinary intelligence would be expected to know or discover on casual inspection that bringing a flame into contact with a flow of gas in the act of lighting a pilot light risks the danger of creating an incident that could result in burn injuries. See *Buhalis*, 296 Mich App at 694. Although plaintiff referred several times in the trial court to the "faulty" furnace, or that defendant left the furnace in a faulty condition, he presented no evidence that the furnace was somehow defective or that it malfunctioned, or that it was anything other than normal. Thus, we conclude that the trial court did not err in finding the danger presented here open and obvious.[5]

---

[4] *Bertram* was abrogated on other grounds, as recognized in *LaVoy v Alternative Loan Trust 2007-4CB*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2014 (Docket No 310322).

[5] Plaintiff compares the instant case to *Hughes v PMG Bldg, Inc*, 227 Mich App 1; 574 NW2d 691 (1997). We find the comparison inapt. In *Hughes*, a roofing subcontractor suffered injury when a porch overhang he was about to work on collapsed under his weight. *Hughes*, 227 Mich App at 3. The overhang was attached to the front of the house with nails and was sided, but its permanent support posts had not been installed because the concrete footings had not been poured. *Id*. Plaintiff believed the overhang solid enough to support his weight, but as he stepped

Plaintiff argues that even if the thermostat and furnace conditions needing repair were open and obvious, the condition was unreasonably dangerous to someone like him, who lacked training and licensure in such repair work. Plaintiff maintains that he could not avoid a danger he did not appreciate and that, given his lack of knowledge and experience in furnace repair, the risk of fire and injury was "special and out of the ordinary," thus falling outside the operation of the open and obvious doctrine. Plaintiff's argument is unavailing.

As *Lugo*'s example of a 30-foot deep unguarded pit in the middle of a parking lot or a water-covered floor one must traverse to exit a commercial building illustrates, some "special aspect" of the open and obvious condition itself must render it unreasonably dangerous. *Lugo*, 464 Mich at 518. However, plaintiff bases his assertion that relighting the furnace was unreasonably dangerous not on any specific condition of the thermostat or the furnace, but on his lack of training and experience. Nevertheless, the question is not whether the risk posed by the thermostat and furnace is unreasonably dangerous to a person without experience lighting furnace pilots, but whether some attribute of the furnace itself "gives rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided." *Lugo*, 464 Mich at 517. Plaintiff has presented no such evidence.

We conclude that the trial court did not err in determining that plaintiff failed to raise a genuine issue of material fact from which a jury could reasonably conclude that the risks involved in relighting the furnace pilot were not open and obvious, or that some "special aspect" of the thermostat or the furnace gave "rise to a uniquely high likelihood of harm or severity of harm if the risk [was] not avoided." *Lugo*, 464 Mich at 517.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause

---

onto it to attach a shingle, "the overhang pulled away from the house and collapsed without warning." *Id*. Plaintiff fell 20 feet "and suffered severe and permanent injuries." *Id*. Plaintiff sued PMG Building on a theory of premises liability, and the trial court granted the defendant's motion for summary disposition. On appeal, this Court concluded that, while falling off the roof was an open and obvious danger, there existed a genuine issue of material fact regarding whether "the danger posed by the overhang could have been discovered upon casual inspection by a reasonable person in plaintiff's position." *Id*. at 11-12. Unlike the overhang in *Hughes*, the instant plaintiff has pointed to nothing out of the ordinary about the furnace that would pose a risk of danger apart from the general, predictable risks involved in lighting a furnace pilot light.